IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA16-873

 Filed: 15 August 2017

Wake County, No. 15 CRS 224056

STATE OF NORTH CAROLINA

 v.

ASAIAH BEN YISRAEL

 Appeal by defendant from judgment entered 13 April 2016 by Judge Paul C.

Ridgeway in Wake County Superior Court. Heard in the Court of Appeals 20 April

2017.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General Mary L.
 Lucasse, for the State.

 Cooley Law Office, by Craig M. Cooley, for defendant-appellant.

 TYSON, Judge.

 Asaiah Ben Yisrael (“Defendant”) appeals from a judgment entered upon a

jury’s verdict finding him guilty of possession with intent to sell or deliver marijuana.

We find no error.

 I. Background

 Raleigh Police Officer Dennis Brandenburg was employed as the school

resource officer at Enloe Magnet High School. On 30 October 2015 at approximately

10:00 a.m., Officer Brandenburg observed a white Chevrolet Impala vehicle pull into
 STATE V. YISRAEL

 Opinion of the Court

the front entrance of the school and illegally park in the fire lane. Officer

Brandenburg recognized the vehicle as belonging to Malik Jones (“Jones”), a former

Enloe student, who had previously been banned from the school’s grounds for

marijuana possession.

 Officer Brandenburg believed Jones was driving the vehicle. He pulled in

behind the vehicle and activated the blue lights on his marked patrol car. Officer

Brandenburg approached the car and intended to ask Jones why he was illegally

present on school property after being banned. When he reached the driver’s side,

Officer Brandenburg saw Defendant was the driver and was alone in the car. Officer

Brandenburg did not recognize Defendant. Defendant, who was twenty years old,

told Officer Brandenburg that he did not possess a driver’s license, but presented an

identification card.

 At trial, Jones testified he had allowed Defendant to borrow his car the night

before so that Defendant could “go out.” Jones had allowed Defendant to borrow his

car on four or five prior occasions.

 While speaking with Defendant, Officer Brandenburg noticed a strong odor of

marijuana emanating from inside the vehicle. The odor of marijuana prompted

Officer Brandenburg to detain Defendant and search both him and the car.

 Officer Brandenburg recovered $1,504.00 in cash and a small “dime bag” of

marijuana from inside Defendant’s pockets. The officer explained a “dime bag” is

 -2-
 STATE V. YISRAEL

 Opinion of the Court

normally a gram of marijuana. The “dime bag” of marijuana was packaged in a cut

corner of a plastic bag, which, according to Officer Brandenburg, is how a “dime bag”

is normally sold. A small amount of marijuana is placed into each corner of a “baggie,”

and the corners are tied off and cut.

 Officer Brandenburg also found two larger bags of marijuana in the center

console of the Impala. Subsequent analysis of the three bags of marijuana

determined that the weight of the “dime bag” was 0.69 grams, and the weight of the

two larger bags was 4.62 grams and 5.57 grams.

 Officer Brandenburg recovered no empty baggies or scales from inside the car

or from Defendant. Jones’ driver’s license was also found in the center console.

Officer Brandenburg also recovered a loaded .40-caliber Glock handgun in the glove

compartment, which was later determined to have been stolen. Jones testified at

Defendant’s trial and denied he owned the drugs or the stolen and loaded handgun

found inside his car.

 Defendant was indicted and tried upon charges of felonious possession with

intent to sell or deliver marijuana and felonious possession of a weapon on

educational property. Prior to trial, Defendant conceded he possessed the two bags

of marijuana recovered from the center console of the vehicle. When questioned by

the trial court during a Harbison hearing, Defendant stated he understood and

agreed with defense counsel’s decision to concede this fact before the jury. See State

 -3-
 STATE V. YISRAEL

 Opinion of the Court

v. Harbison, 315 N.C. 175, 337 S.E.2d 504 (1985), cert. denied, 476 U.S. 1123, 90 L.

Ed. 2d 672 (1986). In his initial brief before this Court, Defendant argued insufficient

evidence was presented that he constructively possessed the marijuana recovered

from the center console. Defendant subsequently filed a reply brief and expressly

withdrew this argument due to the stipulation he had entered at the Harbison

hearing.

 The jury returned a verdict of not guilty on the charge of possession of a weapon

on educational property, but found Defendant guilty of possession with intent to sell

or deliver marijuana. The trial court sentenced Defendant to a suspended term of six

to seventeen months’ imprisonment and placed him on supervised probation for

twenty-four months. Defendant appeals.

 II. Jurisdiction

 Jurisdiction lies in this Court from final judgment of the superior court entered

upon the jury’s verdict pursuant to N.C. Gen. Stat. §§ 7A-27(b)(1) and 15A-1444(a)

(2015).

 III. Possession with Intent to Sell or Deliver Marijuana

 Defendant argues the trial court erred by denying his motion to dismiss.

Defendant asserts the State failed to present sufficient evidence of his intent to sell

or deliver marijuana and the evidence shows the marijuana in Defendant’s possession

was for personal use. We disagree.

 -4-
 STATE V. YISRAEL

 Opinion of the Court

 A. Standard of Review

 “This Court reviews the trial court’s denial of a motion to dismiss de novo.”

State v. Smith, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). “Upon defendant’s

motion for dismissal, the question for the Court is whether there is substantial

evidence (1) of each essential element of the offense charged, or of a lesser offense

included therein, and (2) of defendant’s being the perpetrator of such offense. If so,

the motion is properly denied.” State v. Fritsch, 351 N.C. 373, 378, 526 S.E.2d 451,

455 (citation and quotation marks omitted), cert. denied, 531 U.S. 890, 148 L. Ed. 2d

150 (2000). “In making its determination, the trial court must consider all evidence

admitted, whether competent or incompetent, in the light most favorable to the State,

giving the State the benefit of every reasonable inference and resolving any

contradictions in its favor.” State v. Rose, 339 N.C. 172, 192, 451 S.E.2d 211, 223

(1994), cert. denied, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995) (emphasis supplied).

 B. Evidence of Defendant’s Intent to Sell or Deliver

 “The offense of possession with intent to sell or deliver has the following three

elements: (1) possession of a substance; (2) the substance must be a controlled

substance; (3) there must be intent to sell or distribute the controlled substance.”

State v. Carr, 145 N.C. App. 335, 341, 549 S.E.2d 897, 901 (2001) (citing N.C. Gen.

Stat. § 90-95(a)(1)).

 While intent [to sell or deliver] may be shown by direct
 evidence, it is often proven by circumstantial evidence from

 -5-
 STATE V. YISRAEL

 Opinion of the Court

 which it may be inferred. [T]he intent to sell or [deliver]
 may be inferred from (1) the packaging, labeling, and
 storage of the controlled substance, (2) the defendant’s
 activities, (3) the quantity found, and (4) the presence of
 cash or drug paraphernalia. Although quantity of the
 controlled substance alone may suffice to support the
 inference of an intent to transfer, sell, or deliver, it must be
 a substantial amount.

State v. Wilkins, 208 N.C. App. 729, 731, 703 S.E.2d 807, 809-10 (2010) (citations and

internal quotation marks omitted).

 On numerous occasions, this Court has applied these four and other related

factors to determine whether the evidence was sufficient to permit the jury to infer

the defendant possessed a controlled substance with the intent to sell or deliver and

overcome the defendant’s motion to dismiss.

 1. Quantity of Illegal Drugs

 In some cases, the amount of the controlled substance recovered, standing

alone, is sufficient to allow the jury to find the defendant possessed the requisite

intent to sell or deliver. See, e.g., State v. Morgan, 329 N.C. 654, 660, 406 S.E.2d 833,

836 (1991) (one ounce or 28.3 grams of cocaine “was sufficient evidence to support the

inference that defendant intended to deliver or sell the cocaine”); cf. State v. Wiggins,

33 N.C. App. 291, 294-95, 235 S.E.2d 265, 268 (evidence insufficient to support an

inference the defendant intended to sell or deliver where 215.5 grams of marijuana

was seized without evidence of any packaging paraphernalia related to rolling or

weighing), cert. denied, 293 N.C. 592, 241 S.E.2d 513 (1977).

 -6-
 STATE V. YISRAEL

 Opinion of the Court

 Here, a total of 10.88 grams of marijuana was recovered from Defendant’s

person and inside the vehicle’s console. The two baggies inside the console contained

a total of 10.19 grams, while the “dime bag” recovered from inside Defendant’s pocket

contained .69 grams of marijuana. The amount of marijuana found on Defendant’s

person and inside the vehicle’s console might not be sufficient, standing alone, to

support an inference that Defendant intended to sell or deliver marijuana. See

Wilkins, 208 N.C. App. at 731-32, 703 S.E.2d at 810 (Because the quantity of

marijuana “alone is insufficient to prove that defendant had the intent to sell or

deliver[,] . . . we must examine the other evidence presented in the light most

favorable to the State.”). Defendant’s admitted possession, together with other

surrounding circumstances and evidence recovered, were sufficient to overcome

Defendant’s motion to dismiss and permit the jury to infer Defendant had the intent

to sell or deliver marijuana.

 2. Packaging of Illegal Drugs

 The 10.88 grams of marijuana was packaged in three plastic bags. The two

bags recovered from the center console contained a similar amount of marijuana (4.62

and 5.57 grams), and were considerably larger than the “dime bag” found upon

Defendant’s person. Officer Brandenburg testified one gram of marijuana, or a “dime

bag,” has a street value of twenty to twenty-five dollars.

 -7-
 STATE V. YISRAEL

 Opinion of the Court

 The dissenting opinion cites the testimony of Officer Brandenburg, and

discusses the “quality” of marijuana contained in the two bags found in the center

console. Officer Brandenburg testified:

 They were in larger bags, and if memory serves me right,
 they were more of what I would consider remnant
 marijuana, from where – if you were to bag up the dime
 bags, this would be the remnant stuff that didn’t have as
 many buds and stuff in it as the regular marijuana, or the
 sellable marijuana.

Officer Brandenburg also testified the marijuana in the two larger bags “would

typically need to be divided up into smaller bags to be sold.”

 The dissenting opinion concludes the clear implication of Officer

Brandenburg’s testimony was that the “remnant marijuana” he found in the console

was “not of a quality typically offered for sale.” The equal or stronger implication of

Officer Brandenburg’s testimony is that Defendant possessed marijuana for sale.

Marijuana that is not “sellable” is unlikely to be “useable.” It seems that an

individual who purchases marijuana from a dealer solely for personal use would have

no reason to possess the remnant or “unsellable” marijuana. The presence of two

larger bags of marijuana containing “remnant” marijuana suggests the bags had been

obtained in bulk and partially picked through for packaging “regular” or “sellable”

marijuana. Defendant also possessed a dime bag of marijuana, which is how Officer

Brandenburg testified that marijuana is packaged to sell. The packaging and

possession of both the “sellable” and “unsellable” marijuana is evidence which raises

 -8-
 STATE V. YISRAEL

 Opinion of the Court

an inference and from which the jury could determine Defendant had the intent to

sell marijuana.

 3. Large Quantity of Unsourced Cash

 While the amount and packaging of the marijuana arguably might raise an

issue whether Defendant possessed for personal use or the intent to sell or deliver,

these factors are for the jury to decide and are not solely determinative of whether

the charge was properly submitted to the jury. The uncontroverted evidence also

shows Defendant, twenty years old, was carrying a large amount of cash ($1,504.00)

on his person and was on the grounds of a high school while possessing illegal drugs.

The cash found upon Defendant was also presented as evidence for the jury to view,

and the prosecutor stated during his closing argument that the denominations of the

cash consisted of ten, twenty, and one-hundred dollar bills.

 The presence of cash is another factor that case precedents require us to

consider to determine whether possession of illegal drugs with the intent to sell or

deliver may be inferred. Id. at 731, 703 S.E.2d at 809-10; see also State v. Alston, 91

N.C. App. 707, 711, 373 S.E.2d 306, 310 (1988) (holding the large amount of cash on

the defendant’s person supported an inference that the defendant had the intent to

sell or deliver the 4.27 grams of cocaine packaged in twenty separate envelopes).

 4. Stolen and Loaded Handgun

 -9-
 STATE V. YISRAEL

 Opinion of the Court

 A stolen and loaded handgun was also recovered from inside the glove

compartment of the vehicle. Jones denied any connection to the handgun. While the

presence or possession of a firearm is not specifically listed as a Wilkins factor to

determine intent to sell or deliver a controlled substance, see Wilkins, 208 N.C. App.

at 731, 703 S.E.2d at 809-10, this Court has specifically recognized: “As a practical

matter, firearms are frequently involved for protection in the illegal drug trade.” State

v. Smith, 99 N.C. App. 67, 72, 392 S.E.2d 642, 645 (1990), cert. denied, 328 N.C. 96,

402 S.E.2d 824 (1991).

 The dissenting opinion does not recognize the presence of the stolen and loaded

firearm in the glove compartment of the vehicle Defendant was driving as relevant to

our consideration of whether Defendant’s intent can be inferred, and views the

packaging of the marijuana and cash recovered from Defendant as the only pertinent

factors. Neither the Supreme Court of North Carolina nor this Court has ever

recognized the factors set forth in Wilkins as exclusive.

 This Court has specifically determined “the presence of a gun was relevant to

the possession [of cocaine with intent to manufacture, sell, or deliver] and trafficking

charges.” State v. Boyd, 177 N.C. App. 165, 171, 628 S.E.2d 796, 802 (2006); see also

State v. Willis, 125 N.C. App. 537, 543, 481 S.E.2d 407, 411 (1997) (recognizing the

“common-sense association of drugs and guns”).

 - 10 -
 STATE V. YISRAEL

 Opinion of the Court

 On numerous occasions our federal courts have also recognized the nexus

between the presence or use of a firearm and the intent to sell or deliver controlled

substances. See, e.g., United States v. White, 969 F.2d 681, 684 (8th Cir. 1992)

(“Because a gun is ‘generally considered a tool of the trade for drug dealers, [it] is also

evidence of intent to distribute.’” (quoting United States v. Schubel, 912 F.2d 952, 956

(8th Cir. 1990))); United States v. Rush, 890 F.2d 45, 49-52 (7th Cir. 1989) (A loaded

firearm found in a car defendant was approaching when arrested was relevant to

show possession of heroin with intent to distribute, because the weapon was a “tool

of the trade,” and was an “essential part of the crime of possession with intent to

distribute.”); United States v. Dunn, 846 F.2d 761, 764 (D.C. Cir. 1988) (A loaded

firearm found on the couch near the defendant was a “tool of the narcotic trade,” and

supported inference of intent to distribute where defendant constructively possessed

drugs recovered from inside the house.).

 The presence of a stolen and loaded handgun, a “tool of the trade for drug

dealers,” inside the vehicle and readily accessible to Defendant, is certainly relevant

to and is another factor the court should consider in determining whether Defendant

had the intent to sell or deliver an illegal substance. White, 969 F.2d at 684; Boyd,

177 N.C. App. at 171, 628 S.E.2d at 802. The registered owner of the vehicle testified

neither the drugs nor the stolen and loaded firearm belonged to him.

 - 11 -
 STATE V. YISRAEL

 Opinion of the Court

 Despite our precedents, the dissenting opinion does not consider the additional

presence of the stolen and loaded firearm as an intent factor and cites this Court’s

decision in Wilkins to vote to reverse the jury’s verdict. In Wilkins, the defendant

possessed 1.89 grams of marijuana, contained within three separate “tied off” bags.

Wilkins, 208 N.C. App. at 730, 703 S.E.2d at 809. The defendant also carried

$1,264.00 in cash. Id. The defendant testified that he had purchased the marijuana

for personal use. Id. He further testified that approximately $1,000.00 of the cash

recovered was money his mother had given him for a cash bond because he was “on

the run,” and the remaining $264.00 was from a check he had cashed. Id.

 This Court considered the amount and packaging of the marijuana and the

presence of explained cash on the defendant’s person, and determined the evidence

was insufficient to permit the jury to determine whether the defendant intended to

sell or deliver the marijuana. Id. at 732-33, 703 S.E.2d at 810.

 Wilkins is distinguishable from the facts and circumstances before us. In

Wilkins, the defendant possessed only a small fraction of the amount of marijuana

that Defendant possessed here, and the value of the marijuana was only thirty

dollars. Id. at 732, 703 S.E.2d at 810. Here, no legitimate source is in the record for

the $1,504.00 multi-denominations of cash recovered from Defendant’s person and

introduced before the jury.

 - 12 -
 STATE V. YISRAEL

 Opinion of the Court

 The dissenting opinion also cites State v. Nettles, 170 N.C. App. 100, 612 S.E.2d

172, disc. review denied, 359 N.C. 640, 617 S.E.2d 286 (2005). In that case, officers

found 1.2 grams of crack cocaine, consisting of four or five rocks, rolled in a napkin

under the floor mat of a vehicle parked in the defendant’s yard. Id. at 104, 612 S.E.2d

at 175. The defendant was inside the house with $411.00 in cash on his person. Id.

This Court determined the evidence was insufficient to show intent to sell or deliver

the cocaine. Id. at 108, 612 S.E.2d at 177.

 This Court explained that the defendant was not carrying a large amount of

cash; the defendant stated the source of the cash was part of the money he had

received from cashing his social security check; the officers could not state whether

the money was in the defendant’s pocket or wallet; and, the officers did not discover

any other money on the premises. Id. at 107, 612 S.E.2d at 176-77. Here, Defendant

was carrying a significantly larger amount of cash, consisting of ten, twenty, and

hundred-dollar bills, with the marijuana and a stolen and loaded handgun.

 The following cumulative factors were present in this case, which distinguish

it from Wilkins and Nettles: (1) possessing illegal drugs on high school grounds where

Defendant was not a student; (2) possessing “unsellable” remnant marijuana in two

larger bags near a “dime bag” of “sellable” marijuana; (3) driving a vehicle owned by

Jones, who had been banned from the school for possession of drugs; (4) driving the

vehicle without a driver’s license; (5) illegally parking the vehicle in a fire lane near

 - 13 -
 STATE V. YISRAEL

 Opinion of the Court

the school’s entrance at 10:00 a.m.; and, (6) with the presence of a stolen and loaded

handgun inside the vehicle.

 The presence of the stolen and loaded firearm in this case is relevant to ruling

on Defendant’s motion to dismiss, even though the jury returned a verdict of not

guilty of possessing a weapon on educational property. We review the totality of the

evidence on Defendant’s motion to dismiss in the light most favorable to the State to

determine its sufficiency to submit the charge to the jury. Rose, 339 N.C. at 192, 451

S.E.2d at 223. The jury’s ultimate determination on the separate crime is not

relevant to whether the trial court properly denied Defendant’s motion to dismiss the

charge of possession with intent to sell or deliver marijuana and submitted the charge

to the jury.

 “In ‘borderline’ or close cases, our courts have consistently expressed a

preference for submitting issues to the jury[.]” State v. Hamilton, 77 N.C. App. 506,

512, 335 S.E.2d 506, 510 (1985), disc. review denied, 315 N.C. 593, 341 S.E.2d 33

(1986).

 This quantity of illegal drugs and its packaging, together with Defendant’s

access to Jones’ vehicle since the previous evening; his illegal presence on high school

grounds; the large amount of unsourced cash on Defendant’s person; and the stolen

and loaded handgun is sufficient to support a reasonable inference that Defendant

intended to sell or deliver the marijuana he admittedly possessed, when reviewed in

 - 14 -
 STATE V. YISRAEL

 Opinion of the Court

the light most favorable to the State. Jones, the owner of the vehicle, denied

ownership of either the marijuana or the handgun. Defendant’s argument is

overruled. The trial court’s ruling on Defendant’s motion to dismiss is affirmed.

 IV. Conclusion

 The cumulative evidence, properly viewed in the light most favorable to the

State, is sufficient for the trial court to submit and permit the jury to consider the

intent element of possession with intent to sell or deliver marijuana. The trial court

did not err and correctly denied Defendant’s motion to dismiss.

 We find no error in the denial of Defendant’s motion to dismiss, the jury’s

conviction, or in the judgment entered thereon. It is so ordered.

 NO ERROR.

 Judge DILLON concurs.

 Chief Judge McGEE dissents with separate opinion.

 - 15 -
 No. COA16-873 – State v. Yisrael

 McGEE, Chief Judge, dissenting.

 Because I believe “[t]he evidence in this case, viewed in the light most favorable

to the State, indicates that [D]efendant was a drug user, not a drug seller[,]” State v.

Wilkins, 208 N.C. App. 729, 733, 703 S.E.2d 807, 811 (2010), I respectfully dissent.

 I do not believe the evidence constituted substantial evidence of the intent to

sell element of possession with intent to sell or deliver (“PWISD”). Specifically, (1)

the amount of marijuana recovered was de minimis, and suggestive of possession for

personal use rather than intent to sell; (2) the undisputed testimony was that the

vast majority of the marijuana was not of typically “sellable” quality; (3) the

packaging was likewise more consistent with personal use; (4) Defendant did not have

scales, baggies, or other paraphernalia to prepare the marijuana for sale; (5) there

was no testimony indicating that Defendant’s actions were suggestive of an intent to

sell marijuana; (6) the cash recovered, though some evidence of an intent to sell, was

not of such quantity to overcome the lack of additional supporting evidence, and there

was no testimony explaining the relevance of the cash to any intent to sell; (7) the

gun recovered from the glove compartment was introduced as evidence in support of

the possession of a firearm on educational property charge, not in support of PWISD,

and there was no testimony linking the gun to any intent to sell; (8) even considering

the gun, the totality of the evidence is more suggestive of possession for personal use

than for sale; and (9) the additional factors relied upon by the majority opinion have

minimal to no relevance to the contested issue.
 STATE V. YISRAEL

 McGEE, C.J., dissenting

 I. Facts

 In addition to the facts included in the majority opinion, I also note the

following. Officer Brandenburg testified that he saw Jones’ Impala “pull[] into the

main entrance, what we call the car loop, the car pool loop, of the school, which goes

right to the front entrance of the school.” The Impala parked in the “fire lane” of the

car pool loop, which Officer Brandenburg testified was “very common.” Officer

Brandenburg determined that Defendant, and not car owner Jones, was the sole

occupant. Officer Brandenburg did not know Defendant prior to this interaction and

he testified Defendant said he was there to pick up a friend, a student at Enloe.

Officer Brandenburg knew the student, and saw him looking out of the school at

Defendant while Defendant was detained.

 Though Defendant did indicate during the Harbison hearing that he was going

to admit to possession of all the marijuana, Defendant did not admit at trial or in

closing that he was guilty of possessing the 10.19 grams recovered from the center

console of Jones’ vehicle. Defendant’s attorney, apparently having changed his trial

strategy, argued in his opening statement that Defendant was “guilty of one thing

and that’s for having a dime bag of marijuana in his pocket.” In closing, Defendant’s

attorney argued that “[Defendant] just has his own one bag for personal use. And

that’s what is called possession of marijuana. So we would ask you to find him guilty

of possession of marijuana.” Defendant moved to dismiss the charges against him at

 2
 STATE V. YISRAEL

 McGEE, C.J., dissenting

the close of the State’s evidence and all the evidence, specifically focusing on the

absence of sales-related paraphernalia, such as “baggies” and “scales.” For the

purposes of Defendant’s motion to dismiss, I assume Defendant possessed the entire

10.88 grams of marijuana recovered from both his person and the Impala. The trial

court denied Defendant’s motions.

 II. Analysis

 We must determine whether there was substantial evidence that Defendant

had the intent to sell marijuana. As noted by the majority opinion, intent to sell can

be inferred from “‘(1) the packaging, labeling, and storage of the controlled substance,

(2) the defendant’s activities, (3) the quantity found, and (4) the presence of cash or

drug paraphernalia.’” Wilkins, 208 N.C. App. at 731, 703 S.E.2d at 809–10 (citation

omitted). These factors (“Wilkins factors”) seem to have first appeared in their

current form in State v. Nettles, 170 N.C. App. 100, 106, 612 S.E.2d 172, 176 (2005),

an opinion that examined earlier case law. In prior opinions, the presence of firearms

was not considered in the intent to sell analyses, even when firearms were recovered.

See State v. Smith, 99 N.C. App. 67, 73–74, 392 S.E.2d 642, 646 (1990); State v. King,

42 N.C. App. 210, 212–13, 256 S.E.2d 247, 248–49 (1979).

 Traditionally, the three Wilkins factors that appear to have been most

influential have been the amount of the substance, its packaging, and the presence

of paraphernalia used in portioning and packaging the substance for sale. See King,

 3
 STATE V. YISRAEL

 McGEE, C.J., dissenting

42 N.C. App. at 212–13, 256 S.E.2d at 248–49; State v. Sanders, 171 N.C. App. 46, 48,

50 and 56-57, 613 S.E.2d 708, 710, 711 and 715, aff’d per curiam, 360 N.C. 170, 622

S.E.2d 492 (2005) (suspiciously packaged diazepam, marijuana residue in multiple

locations, “plastic baggies with corners ripped off,” scales, evidence defendant was not

personally using diazepam, and other evidence recovered not sufficient to prove

intent when there was no officer testimony stating certain evidence was “indicative

of an intent to sell rather than personal use”); State v. Roseboro, 55 N.C. App. 205,

210, 284 S.E.2d 725, 728 (1981) (“while the quantity of cocaine was small, there was

evidence of the presence of drug paraphernalia (two sets of scales, one beside a pouch

of cocaine, and an abundance of Ziploc bags) sufficient for the charge of possession

with intent to sell to go to the jury”).

 The evidence in a number of these cases was stronger than in the present case,

and I note that in Sanders, our Supreme Court affirmed the majority opinion’s

analysis per curiam, including the importance of testimony demonstrating evidence

presented at trial is more suggestive of an intent to sell than personal use. In the

present case, there was no such testimony, and the State and the majority opinion

primarily rely on factors not contained in Wilkins or other binding precedent. I do

not contend the Wilkins factors are exclusive, but I do believe they have been

established as more relevant to our analysis than other potential evidence.

 A. Quantity

 4
 STATE V. YISRAEL

 McGEE, C.J., dissenting

 In order for the amount of a controlled substance to be considered a relevant

factor in determining an intent to sell, “it must be a substantial amount.” Wilkins,

208 N.C. App. at 731, 703 S.E.2d at 810 (quotation marks and citation omitted). The

closer the amount of a controlled substance approaches the amount required for a

trafficking conviction, the more relevant is the amount in suggesting an intent to sell.

State v. Morgan, 329 N.C. 654, 659-60, 406 S.E.2d 833, 836 (1991) (citations omitted).1

N.C. Gen. Stat. § 90-95(h)(1) sets out the smallest quantity of marijuana required for

a charge of “trafficking in marijuana[,]” which amount is in excess of ten pounds.

Defendant in this case was found to have been in possession of 10.88 grams of

marijuana — approximately 0.38 ounces or 0.024 pounds. Ten pounds equals

approximately 4,536 grams, or about 417 times the 10.88 grams recovered from

Defendant’s person and Jones’ Impala. Defendant possessed 0.0024% of the requisite

amount of marijuana for trafficking. This Court has deemed an amount of cocaine

that was relatively much greater than the amount of marijuana recovered in the

present case as a “de minimis” amount:

 defendant possessed four to five crack cocaine rocks which
 weighed 1.2 grams, or .04% of the requisite amount for

 1 The majority opinion cites Morgan for the statement that “one ounce or 28.3 grams of cocaine
‘was sufficient to support the inference that defendant intended to deliver or sell the cocaine[.]’” I note
that according to Morgan: “The General Assembly has determined that twenty-eight grams of cocaine
evinces an intent to distribute that drug on a large scale. N.C.G.S. § 90–95(h)(3) (1990). As in
Williams, we are satisfied that the full ounce defendant had conspired with Mr. Queen to possess ‘was
a substantial amount and was more than an individual would possess for his personal consumption.’”
Morgan, 329 N.C. at 660, 406 S.E.2d at 836 (citations omitted). For trafficking purposes, one ounce of
cocaine is equivalent to ten pounds of marijuana. See N.C. Gen. Stat. § 90-95(h)(1) (2015).

 5
 STATE V. YISRAEL

 McGEE, C.J., dissenting

 trafficking. Therefore, under our Supreme Court’s holding
 in Morgan, it cannot be inferred that defendant had an
 intent to sell or distribute from such a de minimis amount
 alone. The State was required to present either direct or
 circumstantial evidence of an intent to sell.

Nettles, 170 N.C. App. at 106, 612 S.E.2d at 176 (citation omitted). In the present

case, Defendant possessed 0.0024% of the requisite amount of marijuana for

trafficking. For purposes of the trafficking statutes, as compared to the amount of

cocaine recovered in Nettles, the amount of marijuana recovered in the present case

is over sixteen times less than the amount of cocaine recovered in Nettles – 10.88

grams of marijuana must be considered de minimis. Id.; see also State v. Wiggins,

33 N.C. App. 291, 294–95, 235 S.E.2d 265, 268 (1977) (citations omitted) (215.5 grams

of marijuana, “without some additional evidence, is not sufficient to raise an inference

that the marijuana was for the purpose of distribution”). 10.88 grams of marijuana

was clearly insufficient “to raise an inference that the marijuana was for the purpose

of distribution.” Id.

 The majority opinion attempts to compare the amount of marijuana recovered

in the present case to that recovered in certain other cases, such as Wilkins. The

relevant issue is not whether the amount of marijuana recovered in the present case

was more or less than the amount of marijuana recovered in some other case wherein

insufficient evidence of intent to sell was found; the issue is whether the amount

recovered in the present case was substantial enough to provide some evidence of

 6
 STATE V. YISRAEL

 McGEE, C.J., dissenting

intent to sell. Since the amounts found in Wilkins, Nettles, and the present case are

all de minimis, the amounts recovered do not support a finding of an intent to sell. I

find no relevant difference between the 1.89 grams of marijuana involved in Wilkins,

208 N.C. App. at 730, 703 S.E.2d at 809, and the 10.88 grams recovered in the present

case, as both are de minimis, and substantially less than has been determined by this

court to be consistent with personal use. See Wiggins, 33 N.C. App. at 294–95, 235

S.E.2d at 268.

 In its attempt to distinguish this case from Wilkins, the majority opinion notes

that the value of the marijuana in Wilkins was approximately $30.00.2 However, the

value of the marijuana is directly tied to the amount of the marijuana. The evidence

in this case shows only that Defendant possessed a small amount of marijuana,

consistent with personal use. See Nettles, 170 N.C. App. at 107–08, 612 S.E.2d at

177; State v. Turner, 168 N.C. App. 152, 158-59, 607 S.E.2d 19, 24 (officer testified

ten rocks of crack cocaine, weighing 4.8 grams, with value of $150.00 to $200.00, was

more than personal consumption amount; this Court held that testimony was

insufficient to support intent to sell).

 B. Packaging

 The majority opinion focuses almost exclusively on this dissent’s discussion of

the “quality” of the marijuana as testified to by Officer Brandenburg in its

 2 The true value of all the marijuana recovered in the present case was not established at trial.

 7
 STATE V. YISRAEL

 McGEE, C.J., dissenting

“packaging” analysis. However, this dissenting analysis is primarily focused

elsewhere, and I would reach the same conclusion even assuming arguendo that all

the marijuana was of “sellable” quality. This Court has analyzed the packaging prong

of PWISD as follows:

 “The method of packaging a controlled substance, as well
 as the amount of the substance, may constitute evidence
 from which a jury can infer an intent to distribute.” State
 v. Williams, 71 N.C. App. 136, 139, 321 S.E.2d 561, 564
 (1984) (holding that the trial court did not err in denying
 defendant’s motion to dismiss where “[t]he evidence at trial
 showed that the [27.6 grams of] marijuana . . . was
 packaged in seventeen separate, small brown envelopes
 known in street terminology as ‘nickel or dime bags’”); see
 also In re I.R.T., 184 N.C. App. 579, 589, 647 S.E.2d 129,
 137 (2007) (“Cases in which packaging has been a factor
 have tended to involve drugs divided into smaller quantities
 and packaged separately.”); State v. McNeil, 165 N.C. App.
 777, 783, 600 S.E.2d 31, 35 (2004) (finding an intent to sell
 or deliver where defendant possessed 5.5 grams of cocaine
 separated into 22 individually wrapped pieces); aff’d, 359
 N.C. 800, 617 S.E.2d 271 (2005). The State has not pointed
 to a case, nor have we found one, where the division of such
 a small amount of a controlled substance constituted
 sufficient evidence to survive a motion to dismiss.
 Moreover, the [small amount of marijuana] was divided
 into only three separate bags. While small bags may
 typically be used to package marijuana, it is just as likely
 that defendant was a consumer who purchased the drugs
 in that particular packaging from a dealer. Consequently,
 we hold that the separation of [the small amount] of
 marijuana into three small packages, worth a total of
 approximately $30.00, does not raise an inference that
 defendant intended to sell or deliver the marijuana.

 8
 STATE V. YISRAEL

 McGEE, C.J., dissenting

Wilkins, 208 N.C. App. at 732, 703 S.E.2d at 810 (citation omitted) (emphasis added);

see also Morgan, 329 N.C. at 659, 406 S.E.2d at 835.

 The cases cited in Wilkins involved defendants found in possession of large

numbers of pre-packaged smaller units of contraband ready for individual sale. In

order for the number of pre-packaged units to support an inference of an intent to

sell, it must be a number large enough to suggest the units were not purchased for

personal use. For example, in an unpublished opinion, this Court held that 10.98

grams of marijuana, packaged in thirteen individual bags, was insufficient to prove

intent to sell. In re N.J., 230 N.C. App. 140, 752 S.E.2d 255 (2013) (unpublished)

(there was insufficient evidence to determine if marijuana was possessed for personal

use, or sale, where juvenile admitted that he possessed thirteen individually wrapped

bags of marijuana, weighing a total of 10.98 grams).

 In the present case, as in Wilkins, the marijuana was only divided into three

bags, but one was a single “dime bag” found in Defendant’s pocket, while the other

two were “relatively small” plastic bags found in the center console of the car. There

were no additional empty bags or containers into which this marijuana could have

been divided for sale, nor any scale with which to measure the marijuana for sale.

Officer Brandenburg testified that he had arrested people pursuant to his duties as

a school resource officer, and that typically it was the small “dime-sized” bags that

were brought on school grounds for sale, and that “[n]ormally [the] dime-sized bag[s]

 9
 STATE V. YISRAEL

 McGEE, C.J., dissenting

[are found] inside of another bag or a capsule. Recently . . . medical capsules has

been the new way to do it. But they’ll be the little dime bag inside bigger packages.”

Officer Brandenburg also responded: “Yes, ma’am” when he was asked: “[W]hen you

talk about the dime bags and how they – when they’re sold they will be inside some

larger container, there would often be multiple packages of dime bags in that larger

container[.]” The following colloquy occurred between Defendant’s attorney and

Officer Brandenburg:

 Q. Because a drug seller will take – will have larger bags
 of marijuana, put them in a smaller bag, reweigh them –
 weigh them on a scale to determine the correct amount of
 marijuana is being sold and then sell it to someone, correct?

 A. That’s what I’ve heard, yes, ma’am.

 Q. Okay. So in that sense, if you see plastic – a box of
 plastic baggies in the car and you see scales in the car, you
 assume it’s indicative of drug selling, correct?

 A. Yes, ma’am.

 Q. And you did not see a scale or a plastic – a box full of
 plastic baggies in this car, correct?

 A. I do not remember seeing that, no, ma’am.

 ....

 Q. [T]hose two big bags would typically need to be divided
 up into smaller bags to be sold, correct?

 A. Yes, ma’am.

 Q. And to do that you would need multiple plastic baggies

 10
 STATE V. YISRAEL

 McGEE, C.J., dissenting

 and scales, correct?

 A. That would be correct.

 In Officer Brandenburg’s opinion, the marijuana recovered from the console

was not “regular” or “sellable marijuana” and, even had it been “sellable,” no scales

were found in the car with which to divide the marijuana, nor was any separate

packaging found in the car with which to re-package the marijuana for sale. See

Nettles, 170 N.C. App. at 107, 612 S.E.2d at 177 (evidence not substantial in part

because there was no “drug paraphernalia typically used in the sale of drugs found

on the premises”). In short, “[t]here was no testimony that the drugs were packaged,

stored, or labeled in a manner consistent with the sale of drugs.” Id. at 107, 612

S.E.2d at 176 (emphasis added).

 Assuming, arguendo, that the quality of the marijuana is an appropriate factor

to consider in the packaging analysis, the majority opinion, adopting the State’s

argument on appeal, states: “The packaging and possession of both the ‘sellable’ and

‘unsellable’ marijuana is evidence which raises an inference and from which the jury

could determine Defendant had the intent to sell marijuana.” The majority opinion

reaches this conclusion based upon its contentions that: “Marijuana that is not

‘sellable’ is unlikely to be ‘useable[;]’” a person “would have no reason to possess the

remnant or ‘unsellable’ marijuana[;]” and that the presence of the “larger bags of

marijuana containing ‘remnant’ marijuana suggests the bags had been obtained in

 11
 STATE V. YISRAEL

 McGEE, C.J., dissenting

bulk and partially picked through for packaging ‘regular’ or ‘sellable’ marijuana.”

There was no testimony supporting this reasoning, and no such argument was made

to the trial court or the jury. Sanders, 171 N.C. App. at 50, 613 S.E.2d at 711; Nettles,

170 N.C. App. at 107, 612 S.E.2d at 176. Further, two bags of marijuana containing

4.62 and 5.57 grams of marijuana constitute a de minimis amount wholly consistent

with personal use, not “bulk” purchases. Marijuana of all qualities can be used, and

would be unlikely to be thrown out; however “remnants” would be difficult to sell.

The absence of scales and additional baggies suggests that to the extent the larger

bags had been “partially picked through,” it was to obtain the higher quality

marijuana for personal use, and not for the purpose of repackaging and sale.

 Even assuming, arguendo, the larger bags had been picked through at some

earlier time to obtain the quality marijuana for sale, if the remaining marijuana in

the larger bags was not “sellable” at the time Defendant was arrested, that would

only constitute evidence that Defendant – or someone – had possessed that marijuana

in the past with the intent to sell it, and did sell it. However, “unsellable” marijuana

is, by definition, not indicative of a present intent to sell that particular unsellable

marijuana. Though the State could have attempted to do so, Defendant was not

indicted for having already sold the marijuana.

 C. Cash

 12
 STATE V. YISRAEL

 McGEE, C.J., dissenting

 This Court had stated that “unexplained cash is only one factor that can help

support the intent element.” Wilkins, 208 N.C. App. at 732, 703 S.E.2d at 810

(citation omitted). In both Wilkins and the present case, reasonably large amounts

of cash were recovered – $1,264.00 and $1,504.00, respectively. “As with a large

quantity of drugs, we determine that the presence of cash, alone, is insufficient to

infer an intent to sell or distribute.” I.R.T., 184 N.C. App. at 589, 647 S.E.2d at 137.

In a case cited by the majority opinion “[t]he police . . . searched defendant’s person,

and seized large rolls of currency totaling $10,638.00” along with cocaine. State v.

Alston, 91 N.C. App. 707, 708, 373 S.E.2d 306, 308 (1988). This Court justified

holding that the evidence in Alston was sufficient to support a conclusion that the

defendant had the intent to sell cocaine as follows:

 State’s evidence showed that there was, at the most, 4.27
 grams of cocaine3 contained in the envelopes found in the
 building. The cocaine was packaged, however, in twenty
 separate envelopes. Even where the amount of a controlled
 substance is small, the method of packaging is evidence
 from which the jury may infer an intent to sell. The cash
 [$10,638.00] found on defendant’s person also supports
 such an inference.

Alston, 91 N.C. App. at 711, 373 S.E.2d at 310 (citation omitted). Neither the amount

of the drugs, the packaging, nor the cash recovered in the present case are similar to

 3 Although this Court treated the amount of cocaine in Alston as “small,” 4.27 grams
constituted approximately 15.00% of the amount required for the lowest grade of “trafficking” cocaine,
as opposed to the amount of marijuana found in the present case, which was 0.0024% of the amount
required for a trafficking charge. N.C.G.S. § 90-95(h)(3)(a.). For trafficking purposes, the amount of
cocaine involved in Alston was 6,250 times greater than the amount of marijuana involved in this case.

 13
 STATE V. YISRAEL

 McGEE, C.J., dissenting

those factors in Alston. The majority opinion argues that because the amount of cash

recovered in Nettles was less than that recovered in the present case, Nettles is

distinguishable. However, this Court in Wilkins analogized the facts before it with

those in Nettles as follows:

 The present case is similar to Nettles where this Court held
 that possession of a small amount of crack cocaine along
 with $411.00 and a safety pin, which is typically used to
 clean a crack pipe, was insufficient to support a charge of
 possession with intent to sell or deliver. This Court held
 that “[v]iewed in the light most favorable to the State, the
 evidence tends to indicate defendant was a drug user, not
 a drug seller.” We believe the totality of the circumstances
 in this case compels the same conclusion. Defendant
 possessed a very small amount of marijuana that was
 packaged in three small bags and he had $1,264.00 in cash
 on his person. The evidence in this case, viewed in the light
 most favorable to the State, indicates that defendant was a
 drug user, not a drug seller.

Wilkins, 208 N.C. App. at 733, 703 S.E.2d at 810–11 (citations omitted) (emphasis

added). The implication in Wilkins is that if $411.00 was not “a large amount of cash”

for the purposes of determining an intent to sell, then neither was $1,264.00. In line

with Wilkins, I do not believe that the difference in the amounts of cash recovered in

Nettles and the present case constitutes a strong distinguishing factor between the

two cases.

 The majority opinion further attempts to distinguish Nettles on the bases that

in that case “the officers could not state whether the money was in the defendant’s

pocket or wallet,” and no other money was discovered on the premises. I see no

 14
 STATE V. YISRAEL

 McGEE, C.J., dissenting

relevance attached to whether the cash in Nettles was recovered from the defendant’s

wallet or pocket, and there is no difference concerning whether cash was recovered

from any additional locations, since in neither Nettles nor the present case was any

additional cash recovered. See State v. Barnhart, 220 N.C. App. 125, 127–28, 724

S.E.2d 177, 179 (2012) (citations omitted) (emphasis added) (“When reviewing a

challenge to the denial of a defendant’s motion to dismiss a charge on the basis of

insufficiency of the evidence, this Court determines ‘whether the State presented

substantial evidence in support of each element of the charged offense.’ ‘Substantial

evidence is relevant evidence that a reasonable person might accept as adequate, or

would consider necessary to support a particular conclusion.’”).

 Further, the majority opinion attempts to distinguish Wilkins and Nettles from

the present case by drawing a distinction between “explained” cash and

“unexplained” cash. The majority opinion states that “no legitimate source is in the

record for the $1,504.00 multi-denominations of cash recovered from Defendant’s

person and introduced before the jury[,]” whereas in Wilkins and Nettles the

defendants gave innocent explanations for possessing relatively large amounts of

cash. No such distinction between explained and unexplained cash is made in these

opinions, and any such distinction is irrelevant when reviewing the trial court’s

denial of a motion to dismiss based upon insufficient evidence. The majority opinion

relies on language in the fact section of Wilkins to support its assertion that this Court

 15
 STATE V. YISRAEL

 McGEE, C.J., dissenting

factored “the presence of explained [‘legitimate source’] cash on the defendant’s

person” in reaching its conclusion that the defendant’s motion to dismiss should have

been granted. (Emphasis added). However, in the analysis portion of the opinion,

this Court did not address the defendant’s testimony concerning the provenance of the

cash, instead reasoning:

 In addition to the packaging, we must also consider the fact
 that defendant was carrying $1,264.00 in cash. “However,
 unexplained cash is only one factor that can help support
 the intent element.” Upon viewing the evidence of the
 packaging and the cash “cumulatively,” we hold that the
 evidence is insufficient to support the felony charge.

Id. at 732–33, 703 S.E.2d at 810 (citations omitted) (emphasis added).

 Initially, contrary to the majority opinion’s characterization of the cash in

Wilkins as “explained cash,” this Court in Wilkins clearly characterized the $1,264.00

as “unexplained cash” in its PWISD analysis. Id. For the purposes of a motion to

dismiss, any large amount of cash found on a defendant is unexplained, regardless of

what the defendant says, unless there is uncontroverted evidence establishing the

provenance of the cash. Appropriately, this Court in Wilkins did not consider the

defendant’s explanation of how he had come by the $1,264.00, and it treated this cash

as “unexplained” because this Court was required to treat the $1,264.00 as

“unexplained cash.” Factoring the defendant’s self-serving testimony explaining why

he was carrying a large amount of cash would be violative of our standard of review

on a motion to dismiss, as Wilkins recognized. Id. at 732, 703 S.E.2d at 810 (“we must

 16
 STATE V. YISRAEL

 McGEE, C.J., dissenting

examine the other evidence presented in the light most favorable to the State”). The

same standard of review applies to the fact, noted in the majority opinion, that the

defendant in Wilkins “testified that he had purchased the marijuana for personal

use.” The defendant’s testimony in this regard was irrelevant in Wilkins, and has no

relevance in attempting to distinguish the facts of Wilkins from the facts of the

present case.

 Further, in Wilkins the $1,264.00 was recovered in denominations of “60

$20.00 bills, one $10.00 bill, nine $5.00 bills, and nine $1.00 bills.” Wilkins, 208 N.C.

App. at 730, 703 S.E.2d at 809. These are smaller denominations consistent with

what a drug dealer might accumulate when selling packages of marijuana. In the

present case, the majority opinion contends that the cash recovered from Defendant

“consist[ed] of ten, twenty, and hundred-dollar bills[.]” However, contrary to the

assertions of the State and the majority opinion, there is no record evidence of the

denominations comprising the $1,504.00 recovered from Defendant. There was no

testimony about the denominations of the bills, nor what denominations commonly

indicate drug sales. In its closing argument, the State contended the “$1500 [was

comprised of] twenties, hundreds, tens, small denominations, big denominations[.]”

However, the State’s closing argument is not record evidence. State v. Roache, 358

N.C. 243, 289, 595 S.E.2d 381, 411 (2004) (citation omitted) (“‘it is axiomatic that the

arguments of counsel are not evidence’”).

 17
 STATE V. YISRAEL

 McGEE, C.J., dissenting

 The majority opinion’s attempt to distinguish Nettles fails for the same reasons

discussed above. I do not believe this Court considered the defendant’s explanation

of where the cash came from in its analysis and, as stated above, it would have been

inappropriate for it to have done so. State v. Rose, 339 N.C. 172, 192, 451 S.E.2d 211,

223 (1994). I also note that Officer Brandenburg testified that he never asked

Defendant where the $1,504.00 came from. “[G]iven the fact that neither the amount

of marijuana nor the packaging raises an inference that [D]efendant intended to sell

the drugs, the presence of [$1,504.00] as the only additional factor is insufficient to

raise the inference.” Wilkins, 208 N.C. App. at 733, 703 S.E.2d at 810.

 D. Non-Wilkins factors

 The majority opinion relies heavily on evidence not related to the factors set

forth in Wilkins and, while I do not dispute that non-Wilkins factors may be relevant

to an intent to sell analysis, I do not believe they generally carry the same weight.

The majority opinion states:

 The following cumulative factors were present in this case,
 which distinguish it from Wilkins and Nettles: (1)
 possessing illegal drugs on high school grounds where
 Defendant was not a student; (2) possessing “unsellable”
 remnant marijuana in two larger bags near a “dime bag” of
 “sellable” marijuana; (3) driving a vehicle owned by Jones,
 who had been banned from the school for possession of
 drugs; (4) driving the vehicle without a driver’s license; (5)
 illegally parking the vehicle in a fire lane near the school’s
 entrance at 10:00 a.m.; and, (6) with the presence of a
 stolen and loaded handgun inside the vehicle.

 18
 STATE V. YISRAEL

 McGEE, C.J., dissenting

 I believe the factors in Wilkins have been primarily relied upon in intent to sell

cases because they either relate directly to the controlled substance itself –

packaging, labeling, storage, quantity; or constitute evidence that is inextricably

associated with sale or delivery of the controlled substance – the actions of the

defendant (such as suspicious hand-to-hand transactions), see, e.g., State v. Stokley,

184 N.C. App. 336, 337, 646 S.E.2d 640, 642 (2007); suspiciously large amounts of

cash (which is often found on people who have been selling significant amounts of

illegal drugs), see, e.g., Alston, 91 N.C. App. at 708, 711, 373 S.E.2d at 308, 310; and,

most importantly, drug paraphernalia used for preparing the drugs for sale (such as

scales for weighing and multiple bags or other containers for individual packaging),

see, e.g., State v. Williams, __ N.C. App. __, __, 774 S.E.2d 880, 889 (2015).

 I presume the majority opinion’s additional factors are not included among the

Wilkins factors because this Court has determined that, generally, the probative

value of non-Wilkins factors in determining intent to sell or deliver is less than that

of the chosen factors. Concerning the additional “factor” relied upon by the majority

opinion that Jones had been banned from Enloe for drug possession, as supporting

evidence of Defendant’s criminal intent, is improper. Endorsing this approach would

essentially allow the State to present prior bad act evidence of a third party as proof

that the defendant acted in conformity with the third party’s prior bad act. See N.C.

Gen. Stat. § 1A-1, Rule 402(b) (2015). The fact that a defendant is not in possession

 19
 STATE V. YISRAEL

 McGEE, C.J., dissenting

of a valid driver’s license is not relevant in determining the defendant’s intent to sell

marijuana. Concerning the fact that Defendant had stopped the car in a fire lane,

absent evidence that this behavior had been observed in relationship to prior drug

transactions at Enloe, or similar evidence, it is also irrelevant. The fire lane was

directly in front of the school, and part of the “car pool lane” where students were

regularly picked up. Officer Brandenburg testified that people regularly parked in

that fire lane and, when they did so, he would ask them to move if they were still in

their vehicles, as Defendant was. The State did not rely on any of these alleged

“factors” in its prosecution of Defendant for PWISD. There was no testimony that

any of this evidence was indicative of, or related to, any intent to sell, nor were any

of these “factors” argued to the jury as such. Sanders, 171 N.C. App. at 50, 613 S.E.2d

at 711; Nettles, 170 N.C. App. at 107, 612 S.E.2d at 176.

 Concerning Defendant’s presence on school property, the testimony of both

Officer Brandenburg and Jones supports Defendant’s statement to Officer

Brandenburg that he was in the car pool lane because he was going to pick up his

friend Wilson, a student at Enloe. Officer Brandenburg, who personally knew Wilson,

testified that when he was outside with Defendant: “I could see [Wilson] through the

main door windows of the school looking out at us.” Jones testified that after

Defendant was arrested, Defendant told him he went to Enloe to pick up Wilson.

There was no evidence that Defendant’s behavior was inconsistent with that of other

 20
 STATE V. YISRAEL

 McGEE, C.J., dissenting

visitors to the school, and Officer Brandenburg testified to no suspicious activity on

the part of Defendant from which he could infer an intent to sell marijuana. See

Nettles, 170 N.C. App. at 107, 612 S.E.2d at 176 (“Defendant’s actions were not

similar to the actions of a drug dealer.”). Defendant did not interact with anyone

before he was approached by Officer Brandenburg, and the fact that Defendant was

not a student at Enloe does not show an intent to sell.

 Again, the State neither solicited evidence, nor argued to the jury, that any of

the above non-Wilkins factors supported an inference that Defendant had the intent

to sell. Sanders, 171 N.C. App. at 50, 613 S.E.2d at 711; Nettles, 170 N.C. App. at

107, 612 S.E.2d at 176. Further, the State did not attach any significance to the above

evidence in its argument on appeal concerning intent to sell.

 Concerning the handgun recovered from the glove compartment of Jones’ car,

I do not contend that recovery of a weapon can never be relevant to PWISD, I simply

do not believe its relevance in the present case, combined with the other relevant

evidence, was sufficient to survive Defendant’s motion to dismiss. The State neither

presented testimony suggesting that the presence of the gun in the glove

compartment of Jones’ Impala was indicative of an intent to sell on Defendant’s part,

nor made any such argument to the jury. If the jury considered the gun in its intent

to sell deliberation, it would have had to have done so on its own initiative, which

could have been improper. See State v. Mitchell, 336 N.C. 22, 29-30, 442 S.E.2d 24,

 21
 STATE V. YISRAEL

 McGEE, C.J., dissenting

28 (1994); Smith, 99 N.C. App. at 71–72, 392 S.E.2d at 645. Because the State did

not present testimony in support of this argument, nor make this argument to the

jury, I presume the jury acted appropriately.4

 The majority opinion, in arguing for greater relevance of the handgun in our

analysis, relies in part on a statement in Smith: “As a practical matter, firearms are

frequently involved for protection in the illegal drug trade.” Smith, 99 N.C. App. at

72, 392 S.E.2d at 645. It is important to place this quote in context. In Smith, upon

searching the two defendants’ residence, officers found, inter alia, four “nickel” bags

of marijuana; rolling papers; “a bag of marijuana in a photograph holder;” $355.00;

0.22 grams of cocaine in a “bottle labeled ‘manitol[;]’” a box of plastic baggies;

“seventeen individual baggies” with 2.1 grams of cocaine divided between them, all

located in a larger bag; three pistols; and “some scales.” Smith, 99 N.C. App. at 70,

392 S.E.2d at 644.

 One of the defendants in Smith was “charged with felonious possession of a

firearm by a convicted felon.” Id. at 69, 392 S.E.2d at 643. Both the defendants were

charged with PWISD. Id. “The trial court granted defendant Smith’s motion to sever

the firearm possession charge” from the PWISD charges. Id. Therefore, the three

 4 In light of Defendant’s acquittal for possessing a firearm on educational property, we now
know that the jury did not improperly consider the gun in its intent to sell analysis. I do not contend
that the not guilty verdict on the charge of possession of a firearm was relevant to Defendant’s motion
to dismiss the PWISD charge. The jury’s ultimate determination that the State had not proved
Defendant possessed the gun in the glove compartment cannot serve to retroactively support
Defendant’s motion to dismiss.

 22
 STATE V. YISRAEL

 McGEE, C.J., dissenting

pistols recovered from the residence were not introduced as evidence of intent to sell

in the PWISD portion of the trial. However, at the PWISD portion of the trial an

officer testified that three guns were found in the residence. The defendants in Smith

first argued that admission of this testimony “was irrelevant and unduly prejudicial”

during the PWISD portion of the trial. Id. at 71, 392 S.E.2d at 644. In deciding the

defendants’ first argument, this Court first held the defendants’ argument was not

properly preserved, then further reasoned:

 We think that the testimony concerning the guns was
 relevant to “illustrate the circumstances surrounding
 [defendant Crawford’s] arrest.” We also cannot say that it
 is totally irrelevant to . . . the charges of possession with
 intent to sell or deliver cocaine or marijuana. As a practical
 matter, firearms are frequently involved for protection in
 the illegal drug trade.

 We recognize the highly inflammatory nature of raising the
 issue of firearms before the jury, and that the probative
 value of the testimony concerning the guns may have been
 outweighed by the possibility of undue prejudice. In this
 case, however, if there was error in admitting the
 testimony, it was harmless to the defendants since the
 evidence against them was ample.

Smith, 99 N.C. App. at 71–72, 392 S.E.2d at 645 (citations omitted) (emphasis added).

 This analysis was solely limited to whether the defendants were prejudiced by

the admission of the gun evidence during the PWISD portion of the trial, and had no

connection to the defendants’ second argument, which concerned the sufficiency of the

evidence to support PWISD. Further, this Court in Smith recognized that evidence

 23
 STATE V. YISRAEL

 McGEE, C.J., dissenting

of the presence of firearms in a trial for PWISD could be “highly inflammatory” and

“that the probative value of the testimony concerning the guns may have been

outweighed by the possibility of undue prejudice.” Id. at 72, 392 S.E.2d at 645. The

portion of the analysis cited by the majority opinion is also dicta. In the part of its

opinion where this Court addressed the defendants’ argument that the State has

failed to present sufficient evidence of intent to sell, the recovery of the firearms was

not considered, nor even mentioned. Id. at 73, 392 S.E.2d at 646.5

 In the present case, Defendant’s charge of possession of a firearm on

educational property was not severed from his charge of PWISD, so the jury was not

prevented from hearing evidence of the gun recovered from the glove compartment of

Jones’ Impala prior to deliberating the PWISD charge. However, the questions,

testimony, and arguments made at trial indicate the evidence of the firearm was

presented solely in support of the charge of possession of a firearm on educational

property, and not in support of PWISD. See Sanders, 171 N.C. App. at 50, 613 S.E.2d

at 711 (emphasis added) (“In particular, the dissent points out that the thirty

diazepam pills were found inside a cellophane cigarette package inside a plastic bag.

 5 I note that this Court has, in the past, improperly stated that Smith includes a firearm
related holding relevant to PWISD. See State v. Boyd, 177 N.C. App. 165, 171, 628 S.E.2d 796, 802
(2006) (“See State v. Smith, . . . (holding that trial court could properly determine that evidence of a
gun was relevant to the charge of possession with intent to sell or deliver cocaine because ‘[a]s a
practical matter, firearms are frequently involved for protection in the illegal drug trade’”)). There is
no such holding in Smith, however the majority opinion relies on this language from Boyd in support
of its argument.

 24
 STATE V. YISRAEL

 McGEE, C.J., dissenting

However, no officer testified that the packaging of the pills was indicative of an intent

to sell rather than personal use.”). There is no evidence that the trial court considered

the gun at all when it denied Defendant’s motion to dismiss the PWISD charge. It

appears, as in Smith, that the State presented the gun evidence solely in support of

the possession of a firearm charge. Because this argument was not made at trial,

Defendant had no opportunity to object to it and argue that the jury should be

prohibited from considering the evidence of the gun in its intent to sell deliberations,

pursuant to N.C. Gen. Stat. § 1A-1, Rule 403, or for any other reason.

 The State’s arguments in closing made in support of the intent prong of

PWISD indicate that the gun had not been introduced as evidence of Defendant’s

intent to sell:

 In this case you can look at the denominations of currency
 in [D]efendant’s pocket,6 the evidence that you’ve heard
 testimony of with relation to the street value of these drugs
 . . . . Those are things that you can all – you can add
 together and say that those are circumstantial pieces of
 evidence that showed his intent to sell and deliver the
 marijuana.

 The fact that he is out of school, the fact that he is out of
 school at 10:00 in the morning on a Friday as a 20-year-old
 man who is not enrolled there, not a student there and says
 he’s there to pick up someone else who they tried to locate
 and can’t.7 What can you infer from that? Was he really

 6 Again, because there is no record evidence of the denominations, we cannot consider the

State’s characterization of the cash recovered on appeal.
 7 Officer Brandenburg’s testimony was that while he was detaining Defendant at the school,

he saw Wilson, the friend Defendant claimed he was picking up, and that they seemed to communicate

 25
 STATE V. YISRAEL

 McGEE, C.J., dissenting

 there to pick somebody up, or was he there to do something
 else?

 ....

 In this case you’re looking at the circumstances under
 which this evidence was recovered to determine what you
 think [Defendant]’s intent was, if he, in fact, possessed it.

 ....

 But [the marijuana was] packaged individually. If you’re
 using for yourself, why have them in separate bags, the
 separate packaging, the cash, the location of the items.
 Those are things that you can look at and draw inferences
 from to conclude [D]efendant’s intent, that his intent was
 to distribute marijuana. It could very well be that his
 intent was to distribute marijuana that day at the school.
 He said he was there to pick somebody up.

The State, in closing, did not argue any relevance related to the amount of marijuana

recovered, the gun, or that the cash was “unexplained.”

 The majority opinion also cites Boyd and State v. Willis, 125 N.C. App. 537,

481 S.E.2d 411 (1997) in support of its argument for the relevance of the gun

recovered from Jones’ Impala. As noted above, the “holding” in Smith upon which

the Boyd Court relied does not exist. Further, Boyd stands for the proposition that

on the facts of that case, the gun was relevant to PWISD, and that the trial court did

not abuse its discretion in ruling that the probative value of the gun was not

outweighed by its prejudicial effect. Boyd, 177 N.C. App. at 171-72, 628 S.E.2d at

in some manner at a distance, but that when Officer Brandenburg later tried to locate the friend at
the school, he could not.

 26
 STATE V. YISRAEL

 McGEE, C.J., dissenting

802-03. The trial court in the present case was never asked to make any rulings

pursuant to Rules 401 or 403, presumably because the gun was never presented as

evidence in support of PWISD, the trial was not bifurcated, and the gun was clearly

relevant and probative with respect to Defendant’s possession of a firearm charge.

 Willis did not involve any issue of intent to sell. This Court mentioned the

“common-sense association of drugs and guns” in its analysis concerning whether the

officers in that case were justified in conducting a more thorough search of the

defendant, because the defendant had just left a known drug house, was acting

nervously, and the “sudden lunge of [the defendant’s] hand into the interior of his

jacket during the [initial] pat-down” put the officers in reasonable concern for their

safety. Willis, 125 N.C. App. at 543, 481 S.E.2d at 411. Based upon this reasoning,

this Court held: “At that point, the situation became fluid and volatile, and Detective

Sholar reacted reasonably and proportionately in searching and emptying the jacket

pocket.” Id. at 543-44, 481 S.E.2d at 412. That drug dealers are known to sometimes

carry weapons is not in dispute. This fact does not make every firearm found in

proximity to a defendant automatically relevant or admissible in a PWISD trial.

 The majority opinion cites federal cases in support of its argument that

“[d]espite our precedents, the dissenting opinion does not consider the additional

presence of the stolen and locked firearm as an intent factor.” Initially, the majority

opinion has cited only one North Carolina precedent, Boyd, that considered the

 27
 STATE V. YISRAEL

 McGEE, C.J., dissenting

presence of a gun as an intent factor. The federal cases are not binding precedent in

the matter before us. Further, I reiterate that I do consider firearms as potential

“intent factors,” but based upon North Carolina precedent, I do not believe it is per se

proper to consider possession of a firearm in every PWISD case, nor do I believe

possession of a firearm should generally be given the same weight as the established

Wilkins factors. Finally, because the State did not introduce the gun recovered from

Jones’ Impala as evidence of Defendant’s intent to sell, Defendant had no opportunity

to make a Rule 403 objection.

 “Quality” is not a Wilkins factor, but in the proper case I believe it can be

considered in an intent to sell analysis. Concerning the quality of the marijuana in

the present case, I rely on the uncontroverted testimony of Officer Brandenburg. As

the majority opinion acknowledges concerning the two bags of marijuana found in the

console, Officer Brandenburg testified:

 They were in larger bags, and if memory serves me right,
 they were more of what I would consider remnant
 marijuana, from where – if you were to bag up the dime
 bags, this would be the remnant stuff that didn’t have as
 many buds and stuff in it as the regular marijuana, or the
 sellable marijuana.

Officer Brandenburg’s testimony implies that the “remnant marijuana” he found in

the console was not “regular” or “sellable marijuana.” At a minimum, his testimony

strongly implies that the “remnant marijuana” recovered from the console was not of

a quality typically offered for sale. However, I would still vacate Defendant’s

 28
 STATE V. YISRAEL

 McGEE, C.J., dissenting

conviction if the de minimis 10.19 grams of marijuana was in fact quality “sellable

marijuana” and not low-quality “remnant stuff.”

 E. Totality of the Evidence

 The majority opinion devotes a significant portion of its analysis attempting to

distinguish the facts in the present case from those in Wilkins and Nettles by focusing

on individual differences between specific factors, and I have already addressed a

number of those arguments. However, it is the totality of the evidence in each case

that must be considered, and I do not rely solely on Wilkins in support of my “vote to

reverse the jury’s verdict.” This Court considered Wilkins and Nettles in a very recent

unpublished opinion, State v. Carter, __ N.C. App. __, __ S.E.2d __, 2017 WL 3027550

(2017) (unpublished), and then vacated the defendant’s conviction for PWISD. I find

the facts and reasoning in Carter relevant to our analysis. In Carter, police recovered

from the defendant 0.63 grams of methamphetamine in five separate baggies “or

.0225% of the minimum amount to presumptively constitute trafficking[,]” “two

unlabeled pill bottles containing fifty-two (52) tablets of oxycodone,” $431.00, a

syringe, and two cell phones. Id. at *1-3. This court in Carter compared the facts

before it to those in Wilkins and Nettles:

 We find the evidence at hand substantially similar to that
 in Wilkins and Nettles. The State presented no evidence
 that the 0.63 grams of methamphetamine, a very small
 amount, possessed by Defendant “was more than a drug
 user normally would possess for personal use.” No evidence
 was presented that the manner in which the

 29
 STATE V. YISRAEL

 McGEE, C.J., dissenting

 methamphetamine was packaged [five separate baggies]
 was more consistent with Defendant intending to sell rather
 than having previously used the methamphetamine. The
 $431.00 found on Defendant was almost two-thirds less
 than the $1,264.00 found insufficient in Wilkins to support
 an inference of intent to sell.8 There was no evidence of
 other drug paraphernalia consistent with an intent to sell
 methamphetamine such as weighing scales, chemicals, or
 empty plastic baggies.9

Id. at *3 (emphasis added).

 I find the evidence before us substantially similar to that in Carter, and would

likewise find it “substantially similar to that in Wilkins and Nettles.” Id. The amount

of drugs recovered in Nettles and Carter was relatively greater than that recovered in

the present case, though I would characterize the amounts recovered in all four cases

as de minimis. The amount of cash recovered in each instance was significant, but

not highly unusual. “There was no testimony that the drugs were packaged, stored,

or labeled in a manner consistent with the sale of drugs [in any of the four cases].”

Nettles, 170 N.C. App. at 107, 612 S.E.2d at 176. Paraphernalia was found with the

drugs in Nettles and Carter, but “[t]here was no evidence of other drug paraphernalia

consistent with an intent to sell . . . such as weighing scales, chemicals, or empty

 8 $431.00 is slightly more than the amount of money recovered in Nettles.
 9 In a footnote, this Court in Carter stated: “We note that the detectives found two cell phones
when they searched Defendant. However, the State made no argument in its brief on appeal
concerning the significance of Defendant’s possession of these cell phones; and, therefore, we do not
consider their significance either.” Carter, 2017 WL 3027550 at *3, n. 1. I would note, in the present
case, the State did not argue the significance of a number of the facts relied upon by the majority
opinion, and I do not believe we should consider them.

 30
 STATE V. YISRAEL

 McGEE, C.J., dissenting

plastic baggies.” Carter, 2017 WL 3027550 at *3. No paraphernalia, consistent with

an intent to sell or not, was found in Wilkins or the present case. The only potentially

relevant difference that I can find between the facts in Wilkins, Nettles, Carter, and

the present case, is the gun recovered from the glove compartment of Jones’ Impala.

However, for all the reasons discussed above, I do not believe the recovery of this gun

serves to transmute this case from one lacking substantial evidence of an intent to

sell into one including it.

 III. Conclusion

 At trial, the State presented evidence that Defendant was in possession of

$1,504.00 and a small amount of marijuana, packaged in a manner consistent with

personal use. The State also argues on appeal that we should consider the firearm

recovered from the Impala, even though this evidence was not presented to the jury

as evidence of any intent to sell. “The State points to no other [relevant] evidence or

circumstances that in any way suggest that [D]efendant had an intent to sell or

deliver the [marijuana].” Turner, 168 N.C. App. at 158, 607 S.E.2d at 24. “[W]hen

the evidence is . . . sufficient only to raise a suspicion or conjecture as to either the

commission of the offense or the identity of the defendant as the perpetrator, the

motion to dismiss must be allowed.” Id. at 158–59, 607 S.E.2d at 24 (citation omitted).

This is true even if “the suspicion so aroused by the evidence is strong.” State v.

Dulin, __ N.C. App. __, __, 786 S.E.2d 803, 807 (2016) (citation omitted). I do not find

 31
 STATE V. YISRAEL

 McGEE, C.J., dissenting

the suspicion aroused by the evidence in the present case to be strong. I reach the

same conclusion when fully considering the gun recovered from the glove

compartment of Jones’ Impala, and assuming the marijuana recovered from the

center console was all “sellable.”

 The jury was also instructed on the lesser-included offense of possession of

marijuana, Defendant admitted at trial that he possessed the marijuana, and the jury

necessarily found that Defendant possessed the marijuana by convicting him of

PWISD. “Consequently, [I would] vacate [D]efendant’s sentence [of PWISD] and

remand for entry of a judgment ‘as upon a verdict of guilty of simple possession of

marijuana.’” Wilkins, 208 N.C. App. at 733, 703 S.E.2d at 811 (citation omitted).

 32