STATE OF NORTH CAROLINA v. LACY BARNHART

No. COA11-623

(Filed 17 April 2012)

**Burglary and Unlawful Breaking or Entering—larceny— assault on a female—sufficient evidence—motion to dismiss properly denied**

The trial court did not err by denying defendant's motion to dismiss charges of first-degree burglary, larceny after breaking and entering, and assault on a female because there was substantial evidence that defendant was the perpetrator of the crimes for which he was convicted.

Appeal by defendant from judgments entered 27 January 2011 by Judge Douglas B. Sasser in Hoke County Superior Court. Heard in the Court of Appeals 15 December 2011.

*Roy Cooper, Attorney General, by Thomas M. Woodward, Special Deputy Attorney General, for the State.*

*Winifred H. Dillon, for the defendant.*

THIGPEN, Judge.

Lacy Barnhart ("Defendant") appeals from judgments convicting him of first-degree burglary, larceny after breaking and entering, and assault on a female, challenging the sufficiency of the evidence to show that Defendant was the perpetrator of the offenses. We find no error in the trial court's denial of Defendant's motion to dismiss.

The evidence of record tends to show the following: At approximately 11:00 p.m. on 8 April 2010, Jeanne Morgan ("Morgan"), who lived alone, locked all of the doors to her home in Hoke County, North Carolina, and went to bed. At approximately 1:00 a.m. on 9 April 2010, Morgan was awakened by a male intruder lying on top of her and pinning her to the bed. Morgan began screaming, and the intruder told her to "[s]hut the [expletive deleted] up[.]" Morgan complied.

The intruder then dragged Morgan out of bed and demanded that Morgan show him where she kept her jewelry and money. The intruder would not allow Morgan to turn on the light, and he held Morgan tightly by wrapping his left arm around her neck. Morgan showed him where she kept her jewelry case and a fifty-dollar bill, which the intruder took. The intruder then told Morgan to return to

bed and remain there until after she heard the intruder leave. Morgan again complied, after which she called the police. Morgan later discovered that her cell phone and a small change purse from her pocketbook, which she kept in the living room, were also missing.

Morgan testified at trial that the intruder was wearing gloves, and because of his "deeper voice[,]" she believed the man was "an older person, not a young person[.]" Morgan also testified that although she never saw his face, she did see that the intruder was African-American. Morgan said she and the intruder were approximately the same height.

Officer James Fowler ("Officer Fowler") of the Raeford Police Department testified that on 9 April 2010 at approximately 1:00 a.m. he responded to a call concerning a breaking and entering. Shortly thereafter, he arrived at Morgan's home. Officer Fowler and other officers of the Raeford Police Department began canvassing the neighborhood, searching for the intruder and other evidence pertaining to the breaking and entering.

At approximately 3:00 a.m., Officer Fowler stopped by a twenty-four hour convenience store located near Morgan's home. Officer Fowler asked the store clerk to be on the lookout for anyone attempting to sell jewelry or "suspiciously walking around." Officer Fowler returned to the convenience store between 5:00 and 6:00 a.m. after receiving a call about a suspicious male sleeping in a laundromat next door. This man was not doing laundry, and was later identified as Defendant.

Guy Morris ("Morris"), who was working as the security guard at the convenience store and the laundromat on 9 April 2010, testified that he saw Defendant enter the laundromat at approximately 2:00 a.m. Defendant then went to sleep inside the laundromat, after which Morris awoke Defendant and asked him to leave. Defendant left the laundromat and entered the convenience store, where he made a purchase with a fifty-dollar bill. After the transaction, Defendant returned to the laundromat. Morris testified that he observed the laundromat continuously from midnight on 9 April 2010 until the police arrived later the same morning to speak with Defendant. Morris said no one other than Defendant had entered the laundromat during that time.

Detective Herbert Greene ("Detective Greene") testified that he questioned Defendant on 9 April 2010 about the fifty-dollar bill he had used to purchase items at the convenience store. Defendant said he

STATE v. BARNHART

[220 N.C. App. 125 (2012)]

had won the fifty-dollar bill in a poker game at his cousin's house. However, Defendant would not give his cousin's name, address, or telephone number. Defendant told Sergeant Bryan Garwicki ("Sergeant Garwicki") he won the fifty-dollar bill at his brother's house.

Sergeant Garwicki searched the laundromat and recovered a change purse in an open box next to the dryers. A cell phone and several items of jewelry, which met the description given by Morgan of the stolen jewelry, were inside the change purse. At trial, Morgan identified the change purse and jewelry recovered by Sergeant Garwicki as her property, which had been stolen from her home on 9 April 2010. Sergeant Garwicki also recovered two pairs of rubber gloves in a trash can opposite the dryers.

Defendant was placed under arrest and indicted on charges of first-degree burglary, larceny after breaking and entering, possession of stolen goods, second-degree kidnapping, assault on a female, and injury to real property. After the trial in this case, the jury acquitted Defendant of the kidnapping charge and found him guilty of the remaining charges. The trial court arrested judgment on the possession of stolen goods and injury to real property convictions and entered judgments convicting Defendant of first-degree burglary, larceny after breaking and entering, and assault on a female. The trial court imposed the sentences of 115 to 147 months incarceration for the first-degree burglary conviction, 18 to 22 months incarceration for the larceny after breaking and entering conviction, and 150 days incarceration for the assault on a female conviction, to be served consecutively. From these judgments, Defendant appeals.

I: Motion to Dismiss

In Defendant's first and only argument on appeal, he contends the trial court erred by denying his motion to dismiss the charges of first-degree burglary, larceny after breaking and entering, and assault on a female, because there is not substantial evidence that Defendant was the perpetrator of the crimes for which he was convicted. We disagree.

When reviewing a challenge to the denial of a defendant's motion to dismiss a charge on the basis of insufficiency of the evidence, this Court determines "whether the State presented substantial evidence in support of each element of the charged offense." *State v. Chapman*, 359 N.C. 328, 374, 611 S.E.2d 794, 827 (2005) (quotation

**STATE v. BARNHART**

[220 N.C. App. 125 (2012)]

omitted). "Substantial evidence is relevant evidence that a reasonable person might accept as adequate, or would consider necessary to support a particular conclusion." *State v. Abshire*, 363 N.C. 322, 328, 677 S.E.2d 444, 449 (2009) (quotation omitted). "In this determination, all evidence is considered in the light most favorable to the State, and the State receives the benefit of every reasonable inference supported by that evidence." *Id.* (quotation omitted). Additionally, a "substantial evidence inquiry examines the sufficiency of the evidence presented but not its weight," which remains a matter for the jury. *State v. McNeil*, 359 N.C. 800, 804, 617 S.E.2d 271, 274 (2005) (quotation omitted). Thus, "[i]f there is substantial evidence—whether direct, circumstantial, or both—to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied." *Id.* (quotation omitted).

Here, Defendant challenges the sufficiency of the evidence that Defendant was the perpetrator of the crimes charged. Defendant specifically contends that because there was no physical evidence linking Defendant to the crimes in this case; because Morgan could not identify or specifically describe the intruder; and because Defendant did not make any inculpatory statements, there was no substantial evidence that Defendant committed the crimes. We find this argument unconvincing.

The State presented the following evidence: Morgan described Defendant as an African American male who was approximately her height—a description which, although nonspecific, is not inconsistent with Defendant's appearance. The crimes occurred at approximately 1:00 a.m. on 9 April 2010 at Morgan's home. The intruder took a fifty-dollar bill, a change purse, a cell phone, and jewelry. Morris observed Defendant going into the laundromat near Morgan's home at approximately 2:00 a.m. the same morning. The change purse, cell phone, and jewelry that were stolen from Morgan's home were found hidden in a box in the laundromat. Morris testified that he observed the laundromat continuously from midnight on 9 April 2010 until the time that the police arrived to question Defendant. Morris said Defendant was the only person who entered the laundromat during that period of time. Defendant admitted he used a fifty-dollar bill to purchase items at the convenience store that morning, and Defendant gave the police conflicting stories as to where he got the fifty-dollar bill.

Defendant argues this case is analogous to *State v. Malloy*, 309 N.C. 176, 305 S.E.2d 718 (1983), in which the Supreme Court held that there was insufficient evidence to support the defendant's conviction for possession of stolen firearms. In *Malloy*, the Court determined whether the defendant possessed certain stolen firearms located in the trunk of a car parked next to the location at which the defendant was working on another automobile. *Id.* at 177, 305 S.E.2d at 719. The Supreme Court held that the record did not contain sufficient evidence to establish that the defendant actually or constructively possessed the stolen firearms because the only evidence linking the defendant to the stolen firearms was his physical proximity to them. *Id.* at 179-80, 305 S.E.2d at 720-21.

We believe this case is distinguishable from *Malloy*. Here, Defendant's proximity to the stolen items found in the laundromat was not the only evidence incriminating Defendant. Defendant's appearance was consistent with the general description given by Morgan of the intruder. Additionally, Defendant gave the police conflicting stories regarding where he obtained the fifty-dollar bill, and he refused to give the police any contact information for the "brother" or "cousin" from whom Defendant said he had received the fifty-dollar bill. Detective Greene gave the following testimony, regarding Defendant's response to his questions about Defendant's "cousin":

> The reason why I asked for a phone number is because . . . "If I call your [cousin's] phone number, could he tell me . . . that you were at his house gambling that night?" And [Defendant] told me no. . . . I didn't understand what he meant by no . . . and I said, "Well, why do you mean no? You know, you told me you were at your cousin's house gambling." . . . I said, "Would your cousin tell me that?" And he said *no*.

Other facts also distinguish this case from *Malloy*. In *Malloy*, officers testified that the defendant was not the only person near the automobile containing the stolen firearms: "There were two other individuals in the parking lot." *Malloy*, 309 N.C. at 177, 305 S.E.2d at 719. Furthermore, the police first found the defendant in *Malloy* "[a] day or two" after the firearms were stolen, and the police did not discover the stolen firearms until another day had passed. *Id.* at 177-78, 305 S.E.2d at 719.

In this case, testimony reveals that Defendant was the only person seen entering the laundromat where the stolen items were discovered in the relevant hours on the early morning in question, and

Defendant was seen entering the laundromat approximately one hour after the items were stolen. While we recognize that Defendant did not have exclusive control of the laundromat where the stolen items were found, *see State v. Miller*, 363 N.C. 96, 99, 678 S.E.2d 592, 594 (2009) ("Unless a defendant has exclusive possession of the place where the contraband is found, the State must show other incriminating circumstances sufficient for the jury to find a defendant had constructive possession"), we believe there was substantial evidence of other incriminating circumstances sufficient to establish Defendant's constructive possession of the stolen items in this case, *see State v. Alston*, 193 N.C. App. 712, 716, 668 S.E.2d 383, 386 (2008), *aff'd per curiam*, 363 N.C. 367, 677 S.E.2d 455 (2009) ("Incriminating circumstances relevant to constructive possession [have included] . . . evidence that defendant . . . was the only person who could have placed the contraband in the position where it was found").

In light of the foregoing evidence, and viewing the evidence in the light most favorable to the State, we believe the State presented substantial evidence that Defendant was the perpetrator of the first-degree burglary, larceny after breaking and entering, and assault on a female at Morgan's house on 9 April 2011. Therefore, we conclude the trial court did not err in denying Defendant's motion to dismiss.

NO ERROR.

Judges ERVIN and BEASLEY concur.