McGEE, Chief Judge, dissenting.
Because I believe "[t]he evidence in this case, viewed in the light most favorable to *748 the State, indicates that [D]efendant was a drug user, *194 not a drug seller[,]" State v. Wilkins , 208 N.C. App. 729, 733, 703 S.E.2d 807, 811 (2010), I respectfully dissent.
I do not believe the evidence constituted substantial evidence of the intent to sell element of possession with intent to sell or deliver ("PWISD"). Specifically, (1) the amount of marijuana recovered was de minimis , and suggestive of possession for personal use rather than intent to sell; (2) the undisputed testimony was that the vast majority of the marijuana was not of typically "sellable" quality; (3) the packaging was likewise more consistent with personal use; (4) Defendant did not have scales, baggies, or other paraphernalia to prepare the marijuana for sale; (5) there was no testimony indicating that Defendant's actions were suggestive of an intent to sell marijuana; (6) the cash recovered, though some evidence of an intent to sell, was not of such quantity to overcome the lack of additional supporting evidence, and there was no testimony explaining the relevance of the cash to any intent to sell; (7) the gun recovered from the glove compartment was introduced as evidence in support of the possession of a firearm on educational property charge, not in support of PWISD, and there was no testimony linking the gun to any intent to sell; (8) even considering the gun, the totality of the evidence is more suggestive of possession for personal use than for sale; and (9) the additional factors relied upon by the majority opinion have minimal to no relevance to the contested issue.
I. Facts
In addition to the facts included in the majority opinion, I also note the following. Officer Brandenburg testified that he saw Jones' Impala "pull[ ] into the main entrance, what we call the car loop, the car pool loop, of the school, which goes right to the front entrance of the school." The Impala parked in the "fire lane" of the car pool loop, which Officer Brandenburg testified was "very common." Officer Brandenburg determined that Defendant, and not car owner Jones, was the sole occupant. Officer Brandenburg did not know Defendant prior to this interaction and he testified Defendant said he was there to pick up a friend, a student at Enloe. Officer Brandenburg knew the student, and saw him looking out of the school at Defendant while Defendant was detained.
Though Defendant did indicate during the Harbison hearing that he was going to admit to possession of all the marijuana, Defendant did not admit at trial or in closing that he was guilty of possessing the 10.19 grams recovered from the center console of Jones' vehicle. Defendant's attorney, apparently having changed his trial strategy, argued in his opening statement that Defendant was "guilty of one thing and that's for having *195 a dime bag of marijuana in his pocket." In closing, Defendant's attorney argued that "[Defendant] just has his own one bag for personal use. And that's what is called possession of marijuana. So we would ask you to find him guilty of possession of marijuana." Defendant moved to dismiss the charges against him at the close of the State's evidence and all the evidence, specifically focusing on the absence of sales-related paraphernalia, such as "baggies" and "scales." For the purposes of Defendant's motion to dismiss, I assume Defendant possessed the entire 10.88 grams of marijuana recovered from both his person and the Impala. The trial court denied Defendant's motions.
II. Analysis
We must determine whether there was substantial evidence that Defendant had the intent to sell marijuana. As noted by the majority opinion, intent to sell can be inferred from " '(1) the packaging, labeling, and storage of the controlled substance, (2) the defendant's activities, (3) the quantity found, and (4) the presence of cash or drug paraphernalia.' " Wilkins , 208 N.C. App. at 731, 703 S.E.2d at 809-10 (citation omitted). These factors (" Wilkins factors") seem to have first appeared in their current form in State v. Nettles , 170 N.C. App. 100, 106, 612 S.E.2d 172, 176 (2005), an opinion that examined earlier case law. In prior opinions, the presence of firearms was not considered in the intent to sell analyses, even when firearms were recovered. See State v. Smith , 99 N.C. App. 67, 73-74, 392 S.E.2d 642, 646 (1990) ; State v. King , 42 N.C. App. 210, 212-13, 256 S.E.2d 247, 248-49 (1979).
*749 Traditionally, the three Wilkins factors that appear to have been most influential have been the amount of the substance, its packaging, and the presence of paraphernalia used in portioning and packaging the substance for sale. See King , 42 N.C. App. at 212-13, 256 S.E.2d at 248-49 ; State v. Sanders , 171 N.C. App. 46, 48, 50 and 56-57, 613 S.E.2d 708, 710, 711 and 715, aff'd per curiam, 360 N.C. 170, 622 S.E.2d 492 (2005) (suspiciously packaged diazepam, marijuana residue in multiple locations, "plastic baggies with corners ripped off," scales, evidence defendant was not personally using diazepam, and other evidence recovered not sufficient to prove intent when there was no officer testimony stating certain evidence was "indicative of an intent to sell rather than personal use"); State v. Roseboro , 55 N.C. App. 205, 210, 284 S.E.2d 725, 728 (1981) ("while the quantity of cocaine was small, there was evidence of the presence of drug paraphernalia (two sets of scales, one beside a pouch of cocaine, and an abundance of Ziploc bags) sufficient for the charge of possession with intent to sell to go to the jury").
*196 The evidence in a number of these cases was stronger than in the present case, and I note that in Sanders , our Supreme Court affirmed the majority opinion's analysis per curiam , including the importance of testimony demonstrating evidence presented at trial is more suggestive of an intent to sell than personal use. In the present case, there was no such testimony, and the State and the majority opinion primarily rely on factors not contained in Wilkins or other binding precedent. I do not contend the Wilkins factors are exclusive, but I do believe they have been established as more relevant to our analysis than other potential evidence.
A. Quantity
In order for the amount of a controlled substance to be considered a relevant factor in determining an intent to sell, "it must be a substantial amount." Wilkins , 208 N.C. App. at 731, 703 S.E.2d at 810 (quotation marks and citation omitted). The closer the amount of a controlled substance approaches the amount required for a trafficking conviction, the more relevant is the amount in suggesting an intent to sell. State v. Morgan , 329 N.C. 654, 659-60, 406 S.E.2d 833, 836 (1991) (citations omitted).[1] N.C. Gen. Stat. § 90-95(h)(1) sets out the smallest quantity of marijuana required for a charge of "trafficking in marijuana[,]" which amount is in excess of ten pounds. Defendant in this case was found to have been in possession of 10.88 grams of marijuana-approximately 0.38 ounces or 0.024 pounds. Ten pounds equals approximately 4,536 grams, or about 417 times the 10.88 grams recovered from Defendant's person and Jones' Impala. Defendant possessed 0.0024% of the requisite amount of marijuana for trafficking. This Court has deemed an amount of cocaine that was relatively much greater than the amount of marijuana recovered in the present case as a "de minimis " amount:
defendant possessed four to five crack cocaine rocks which weighed 1.2 grams, or .04% of the requisite amount for trafficking. Therefore, under our Supreme Court's holding in Morgan , it cannot be inferred that defendant had an intent to sell or distribute from such a de minimis amount *197 alone. The State was required to present either direct or circumstantial evidence of an intent to sell.
Nettles , 170 N.C. App. at 106, 612 S.E.2d at 176 (citation omitted). In the present case, Defendant possessed 0.0024% of the requisite amount of marijuana for trafficking. For purposes of the trafficking statutes, as compared to the amount of cocaine recovered in *750 Nettles , the amount of marijuana recovered in the present case is over sixteen times less than the amount of cocaine recovered in Nettles -10.88 grams of marijuana must be considered de minimis . Id . ; see also State v. Wiggins , 33 N.C. App. 291, 294-95, 235 S.E.2d 265, 268 (1977) (citations omitted) (215.5 grams of marijuana, "without some additional evidence, is not sufficient to raise an inference that the marijuana was for the purpose of distribution"). 10.88 grams of marijuana was clearly insufficient "to raise an inference that the marijuana was for the purpose of distribution." Id .
The majority opinion attempts to compare the amount of marijuana recovered in the present case to that recovered in certain other cases, such as Wilkins . The relevant issue is not whether the amount of marijuana recovered in the present case was more or less than the amount of marijuana recovered in some other case wherein insufficient evidence of intent to sell was found; the issue is whether the amount recovered in the present case was substantial enough to provide some evidence of intent to sell. Since the amounts found in Wilkins, Nettles, and the present case are all de minimis , the amounts recovered do not support a finding of an intent to sell. I find no relevant difference between the 1.89 grams of marijuana involved in Wilkins , 208 N.C. App. at 730, 703 S.E.2d at 809, and the 10.88 grams recovered in the present case, as both are de minimis , and substantially less than has been determined by this court to be consistent with personal use. See Wiggins , 33 N.C. App. at 294-95, 235 S.E.2d at 268.
In its attempt to distinguish this case from Wilkins , the majority opinion notes that the value of the marijuana in Wilkins was approximately $30.00.[2] However, the value of the marijuana is directly tied to the amount of the marijuana. The evidence in this case shows only that Defendant possessed a small amount of marijuana, consistent with personal use. See Nettles , 170 N.C. App. at 107-08, 612 S.E.2d at 177 ; State v. Turner , 168 N.C. App. 152, 158-59, 607 S.E.2d 19, 24 (officer testified ten rocks of crack cocaine, weighing 4.8 grams, with value of $150.00 to *198 $200.00, was more than personal consumption amount; this Court held that testimony was insufficient to support intent to sell).
B. Packaging
The majority opinion focuses almost exclusively on this dissent's discussion of the "quality" of the marijuana as testified to by Officer Brandenburg in its "packaging" analysis. However, this dissenting analysis is primarily focused elsewhere, and I would reach the same conclusion even assuming arguendo that all the marijuana was of "sellable" quality. This Court has analyzed the packaging prong of PWISD as follows:
"The method of packaging a controlled substance, as well as the amount of the substance, may constitute evidence from which a jury can infer an intent to distribute." State v. Williams , 71 N.C. App. 136, 139, 321 S.E.2d 561, 564 (1984) (holding that the trial court did not err in denying defendant's motion to dismiss where "[t]he evidence at trial showed that the [27.6 grams of] marijuana ... was packaged in seventeen separate, small brown envelopes known in street terminology as 'nickel or dime bags ' "); see also In re I.R.T. , 184 N.C. App. 579, 589, 647 S.E.2d 129, 137 (2007) ("Cases in which packaging has been a factor have tended to involve drugs divided into smaller quantities and packaged separately ."); State v. McNeil , 165 N.C. App. 777, 783, 600 S.E.2d 31, 35 (2004) (finding an intent to sell or deliver where defendant possessed 5.5 grams of cocaine separated into 22 individually wrapped pieces ); aff'd , 359 N.C. 800, 617 S.E.2d 271 (2005). The State has not pointed to a case, nor have we found one, where the division of such a small amount of a controlled substance constituted sufficient evidence to survive a motion to dismiss. Moreover, the [small amount of marijuana] was divided into only three separate bags . While small bags may typically be used to package marijuana, it is just as likely that defendant was a consumer who purchased the drugs in that particular packaging from a dealer. Consequently, we hold that the separation of [the small amount] of marijuana into three small packages, worth a total of approximately $30.00, does not raise an inference that defendant intended to sell or deliver the marijuana.
*751 Wilkins , 208 N.C. App. at 732, 703 S.E.2d at 810 (citation omitted) (emphasis added); see also Morgan , 329 N.C. at 659, 406 S.E.2d at 835.
*199 The cases cited in Wilkins involved defendants found in possession of large numbers of pre-packaged smaller units of contraband ready for individual sale. In order for the number of pre-packaged units to support an inference of an intent to sell, it must be a number large enough to suggest the units were not purchased for personal use. For example, in an unpublished opinion, this Court held that 10.98 grams of marijuana, packaged in thirteen individual bags, was insufficient to prove intent to sell. In re N.J. , 230 N.C. App. 140, 752 S.E.2d 255 (2013) (unpublished) (there was insufficient evidence to determine if marijuana was possessed for personal use, or sale, where juvenile admitted that he possessed thirteen individually wrapped bags of marijuana , weighing a total of 10.98 grams).
In the present case, as in Wilkins , the marijuana was only divided into three bags, but one was a single "dime bag" found in Defendant's pocket, while the other two were "relatively small" plastic bags found in the center console of the car. There were no additional empty bags or containers into which this marijuana could have been divided for sale, nor any scale with which to measure the marijuana for sale. Officer Brandenburg testified that he had arrested people pursuant to his duties as a school resource officer, and that typically it was the small "dime-sized" bags that were brought on school grounds for sale, and that "[n]ormally [the] dime-sized bag[s] [are found] inside of another bag or a capsule. Recently ... medical capsules has been the new way to do it. But they'll be the little dime bag inside bigger packages." Officer Brandenburg also responded: "Yes, ma'am" when he was asked: "[W]hen you talk about the dime bags and how they-when they're sold they will be inside some larger container, there would often be multiple packages of dime bags in that larger container[.]" The following colloquy occurred between Defendant's attorney and Officer Brandenburg:
Q. Because a drug seller will take-will have larger bags of marijuana, put them in a smaller bag, reweigh them-weigh them on a scale to determine the correct amount of marijuana is being sold and then sell it to someone, correct?
A. That's what I've heard, yes, ma'am.
Q. Okay. So in that sense, if you see plastic-a box of plastic baggies in the car and you see scales in the car, you assume it's indicative of drug selling, correct?
A. Yes, ma'am.
Q. And you did not see a scale or a plastic-a box full of plastic baggies in this car, correct?
*200 A. I do not remember seeing that, no, ma'am.
....
Q. [T]hose two big bags would typically need to be divided up into smaller bags to be sold, correct?
A. Yes, ma'am.
Q. And to do that you would need multiple plastic baggies and scales, correct?
A. That would be correct.
In Officer Brandenburg's opinion, the marijuana recovered from the console was not "regular" or "sellable marijuana" and, even had it been "sellable," no scales were found in the car with which to divide the marijuana, nor was any separate packaging found in the car with which to re-package the marijuana for sale. See Nettles , 170 N.C. App. at 107, 612 S.E.2d at 177 (evidence not substantial in part because there was no "drug paraphernalia typically used in the sale of drugs found on the premises"). In short, "[t]here was no testimony that the drugs were packaged, stored, or labeled in a manner consistent with the sale of drugs." Id . at 107, 612 S.E.2d at 176 (emphasis added).
Assuming, arguendo , that the quality of the marijuana is an appropriate factor to consider in the packaging analysis, the majority opinion, adopting the State's argument on appeal, states: "The packaging and possession of both the 'sellable' and 'unsellable' marijuana is evidence which raises an inference and from which the jury could determine Defendant had the intent to sell marijuana." The majority opinion reaches this *752 conclusion based upon its contentions that: "Marijuana that is not 'sellable' is unlikely to be 'useable[;]' " a person "would have no reason to possess the remnant or 'unsellable' marijuana[;]" and that the presence of the "larger bags of marijuana containing 'remnant' marijuana suggests the bags had been obtained in bulk and partially picked through for packaging 'regular' or 'sellable' marijuana." There was no testimony supporting this reasoning, and no such argument was made to the trial court or the jury. Sanders , 171 N.C. App. at 50, 613 S.E.2d at 711 ; Nettles , 170 N.C. App. at 107, 612 S.E.2d at 176. Further, two bags of marijuana containing 4.62 and 5.57 grams of marijuana constitute a de minimis amount wholly consistent with personal use, not "bulk" purchases. Marijuana of all qualities can be used, and would be unlikely to be thrown out; however "remnants" would be difficult to sell. The absence of scales and additional baggies suggests that to the extent the larger bags had been *201 "partially picked through," it was to obtain the higher quality marijuana for personal use, and not for the purpose of repackaging and sale.
Even assuming, arguendo , the larger bags had been picked through at some earlier time to obtain the quality marijuana for sale, if the remaining marijuana in the larger bags was not "sellable" at the time Defendant was arrested, that would only constitute evidence that Defendant-or someone-had possessed that marijuana in the past with the intent to sell it, and did sell it. However, "unsellable" marijuana is, by definition, not indicative of a present intent to sell that particular unsellable marijuana. Though the State could have attempted to do so, Defendant was not indicted for having already sold the marijuana.
C. Cash
This Court had stated that "unexplained cash is only one factor that can help support the intent element." Wilkins , 208 N.C. App. at 732, 703 S.E.2d at 810 (citation omitted). In both Wilkins and the present case, reasonably large amounts of cash were recovered-$1,264.00 and $1,504.00, respectively. "As with a large quantity of drugs, we determine that the presence of cash, alone, is insufficient to infer an intent to sell or distribute." I.R.T. , 184 N.C. App. at 589, 647 S.E.2d at 137. In a case cited by the majority opinion "[t]he police ... searched defendant's person, and seized large rolls of currency totaling $10,638.00" along with cocaine. State v. Alston , 91 N.C. App. 707, 708, 373 S.E.2d 306, 308 (1988). This Court justified holding that the evidence in Alston was sufficient to support a conclusion that the defendant had the intent to sell cocaine as follows:
State's evidence showed that there was, at the most, 4.27 grams of cocaine[3] contained in the envelopes found in the building. The cocaine was packaged, however, in twenty separate envelopes. Even where the amount of a controlled substance is small, the method of packaging is evidence from which the jury may infer an intent to sell. The cash [$10,638.00] found on defendant's person also supports such an inference.
*202 Alston , 91 N.C. App. at 711, 373 S.E.2d at 310 (citation omitted). Neither the amount of the drugs, the packaging, nor the cash recovered in the present case are similar to those factors in Alston . The majority opinion argues that because the amount of cash recovered in Nettles was less than that recovered in the present case, Nettles is distinguishable. However, this Court in Wilkins analogized the facts before it with those in Nettles as follows:
The present case is similar to Nettles where this Court held that possession of a small amount of crack cocaine along with $411.00 and a safety pin, which is typically used to clean a crack pipe, was insufficient to support a charge of possession with intent to sell or deliver. This Court held that "[v]iewed in the light most favorable to the State, the evidence tends to indicate defendant was a drug user, not a drug *753 seller." We believe the totality of the circumstances in this case compels the same conclusion. Defendant possessed a very small amount of marijuana that was packaged in three small bags and he had $1,264.00 in cash on his person. The evidence in this case, viewed in the light most favorable to the State, indicates that defendant was a drug user, not a drug seller.
Wilkins , 208 N.C. App. at 733, 703 S.E.2d at 810-11 (citations omitted) (emphasis added). The implication in Wilkins is that if $411.00 was not "a large amount of cash" for the purposes of determining an intent to sell, then neither was $1,264.00. In line with Wilkins , I do not believe that the difference in the amounts of cash recovered in Nettles and the present case constitutes a strong distinguishing factor between the two cases.
The majority opinion further attempts to distinguish Nettles on the bases that in that case "the officers could not state whether the money was in the defendant's pocket or wallet," and no other money was discovered on the premises. I see no relevance attached to whether the cash in Nettles was recovered from the defendant's wallet or pocket, and there is no difference concerning whether cash was recovered from any additional locations, since in neither Nettles nor the present case was any additional cash recovered. See State v. Barnhart , 220 N.C. App. 125, 127-28, 724 S.E.2d 177, 179 (2012) (citations omitted) (emphasis added) ("When reviewing a challenge to the denial of a defendant's motion to dismiss a charge on the basis of insufficiency of the evidence, this Court determines 'whether the State presented substantial evidence in support of each element of the charged offense.' 'Substantial evidence is *203 relevant evidence that a reasonable person might accept as adequate, or would consider necessary to support a particular conclusion .' ").
Further, the majority opinion attempts to distinguish Wilkins and Nettles from the present case by drawing a distinction between "explained" cash and "unexplained" cash. The majority opinion states that "no legitimate source is in the record for the $1,504.00 multi-denominations of cash recovered from Defendant's person and introduced before the jury[,]" whereas in Wilkins and Nettles the defendants gave innocent explanations for possessing relatively large amounts of cash. No such distinction between explained and unexplained cash is made in these opinions, and any such distinction is irrelevant when reviewing the trial court's denial of a motion to dismiss based upon insufficient evidence. The majority opinion relies on language in the fact section of Wilkins to support its assertion that this Court factored "the presence of explained ['legitimate source'] cash on the defendant's person" in reaching its conclusion that the defendant's motion to dismiss should have been granted. (Emphasis added). However, in the analysis portion of the opinion, this Court did not address the defendant's testimony concerning the provenance of the cash , instead reasoning:
In addition to the packaging, we must also consider the fact that defendant was carrying $1,264.00 in cash. "However, unexplained cash is only one factor that can help support the intent element." Upon viewing the evidence of the packaging and the cash "cumulatively," we hold that the evidence is insufficient to support the felony charge.
Id . at 732-33, 703 S.E.2d at 810 (citations omitted) (emphasis added).
Initially, contrary to the majority opinion's characterization of the cash in Wilkins as "explained cash," this Court in Wilkins clearly characterized the $1,264.00 as "unexplained cash" in its PWISD analysis. Id . For the purposes of a motion to dismiss, any large amount of cash found on a defendant is unexplained, regardless of what the defendant says, unless there is uncontroverted evidence establishing the provenance of the cash. Appropriately, this Court in Wilkins did not consider the defendant's explanation of how he had come by the $1,264.00, and it treated this cash as "unexplained" because this Court was required to treat the $1,264.00 as "unexplained cash." Factoring the defendant's self-serving testimony explaining why he was carrying a large amount of cash would be violative of our standard of review on a motion to dismiss, as Wilkins recognized. Id . at 732, 703 S.E.2d at 810 ("we must *754 examine the other evidence presented in the light most favorable to the *204 State"). The same standard of review applies to the fact, noted in the majority opinion, that the defendant in Wilkins "testified that he had purchased the marijuana for personal use." The defendant's testimony in this regard was irrelevant in Wilkins , and has no relevance in attempting to distinguish the facts of Wilkins from the facts of the present case.
Further, in Wilkins the $1,264.00 was recovered in denominations of "60 $20.00 bills, one $10.00 bill, nine $5.00 bills, and nine $1.00 bills." Wilkins , 208 N.C. App. at 730, 703 S.E.2d at 809. These are smaller denominations consistent with what a drug dealer might accumulate when selling packages of marijuana. In the present case, the majority opinion contends that the cash recovered from Defendant "consist[ed] of ten, twenty, and hundred-dollar bills[.]" However, contrary to the assertions of the State and the majority opinion, there is no record evidence of the denominations comprising the $1,504.00 recovered from Defendant. There was no testimony about the denominations of the bills, nor what denominations commonly indicate drug sales. In its closing argument, the State contended the "$1500 [was comprised of] twenties, hundreds, tens, small denominations, big denominations[.]" However, the State's closing argument is not record evidence. State v. Roache , 358 N.C. 243, 289, 595 S.E.2d 381, 411 (2004) (citation omitted) (" 'it is axiomatic that the arguments of counsel are not evidence' ").
The majority opinion's attempt to distinguish Nettles fails for the same reasons discussed above. I do not believe this Court considered the defendant's explanation of where the cash came from in its analysis and, as stated above, it would have been inappropriate for it to have done so. State v. Rose , 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994). I also note that Officer Brandenburg testified that he never asked Defendant where the $1,504.00 came from. "[G]iven the fact that neither the amount of marijuana nor the packaging raises an inference that [D]efendant intended to sell the drugs, the presence of [$1,504.00] as the only additional factor is insufficient to raise the inference." Wilkins , 208 N.C. App. at 733, 703 S.E.2d at 810.
D. Non-Wilkins factors
The majority opinion relies heavily on evidence not related to the factors set forth in Wilkins and, while I do not dispute that non- Wilkins factors may be relevant to an intent to sell analysis, I do not believe they generally carry the same weight. The majority opinion states:
The following cumulative factors were present in this case, which distinguish it from Wilkins and Nettles :
*205 (1) possessing illegal drugs on high school grounds where Defendant was not a student; (2) possessing "unsellable" remnant marijuana in two larger bags near a "dime bag" of "sellable" marijuana; (3) driving a vehicle owned by Jones, who had been banned from the school for possession of drugs; (4) driving the vehicle without a driver's license; (5) illegally parking the vehicle in a fire lane near the school's entrance at 10:00 a.m.; and, (6) with the presence of a stolen and loaded handgun inside the vehicle.
I believe the factors in Wilkins have been primarily relied upon in intent to sell cases because they either relate directly to the controlled substance itself-packaging, labeling, storage, quantity; or constitute evidence that is inextricably associated with sale or delivery of the controlled substance-the actions of the defendant (such as suspicious hand-to-hand transactions), see, e.g., State v. Stokley , 184 N.C. App. 336, 337, 646 S.E.2d 640, 642 (2007) ; suspiciously large amounts of cash (which is often found on people who have been selling significant amounts of illegal drugs), see, e.g., Alston , 91 N.C. App. at 708, 711, 373 S.E.2d at 308, 310 ; and, most importantly, drug paraphernalia used for preparing the drugs for sale (such as scales for weighing and multiple bags or other containers for individual packaging), see, e.g., State v. Williams , 242 N.C. App. 361, 373-74, 774 S.E.2d 880, 889 (2015).
I presume the majority opinion's additional factors are not included among the Wilkins factors because this Court has determined that, generally, the probative value of non- Wilkins factors in determining intent to sell or deliver is less than that of the chosen *755 factors. Concerning the additional "factor" relied upon by the majority opinion that Jones had been banned from Enloe for drug possession, as supporting evidence of Defendant's criminal intent, is improper. Endorsing this approach would essentially allow the State to present prior bad act evidence of a third party as proof that the defendant acted in conformity with the third party's prior bad act . See N.C. Gen. Stat. § 1A-1, Rule 402(b) (2015). The fact that a defendant is not in possession of a valid driver's license is not relevant in determining the defendant's intent to sell marijuana. Concerning the fact that Defendant had stopped the car in a fire lane, absent evidence that this behavior had been observed in relationship to prior drug transactions at Enloe, or similar evidence, it is also irrelevant. The fire lane was directly in front of the school, and part of the "car pool lane" where students were regularly picked up. Officer Brandenburg testified that people regularly parked in that fire lane and, when they did so, he would ask them to move if they were still in their vehicles, as *206 Defendant was. The State did not rely on any of these alleged "factors" in its prosecution of Defendant for PWISD. There was no testimony that any of this evidence was indicative of, or related to, any intent to sell, nor were any of these "factors" argued to the jury as such. Sanders , 171 N.C. App. at 50, 613 S.E.2d at 711 ; Nettles , 170 N.C. App. at 107, 612 S.E.2d at 176.
Concerning Defendant's presence on school property, the testimony of both Officer Brandenburg and Jones supports Defendant's statement to Officer Brandenburg that he was in the car pool lane because he was going to pick up his friend Wilson, a student at Enloe. Officer Brandenburg, who personally knew Wilson, testified that when he was outside with Defendant: "I could see [Wilson] through the main door windows of the school looking out at us." Jones testified that after Defendant was arrested, Defendant told him he went to Enloe to pick up Wilson. There was no evidence that Defendant's behavior was inconsistent with that of other visitors to the school, and Officer Brandenburg testified to no suspicious activity on the part of Defendant from which he could infer an intent to sell marijuana. See Nettles , 170 N.C. App. at 107, 612 S.E.2d at 176 ("Defendant's actions were not similar to the actions of a drug dealer."). Defendant did not interact with anyone before he was approached by Officer Brandenburg, and the fact that Defendant was not a student at Enloe does not show an intent to sell.
Again, the State neither solicited evidence, nor argued to the jury, that any of the above non- Wilkins factors supported an inference that Defendant had the intent to sell. Sanders , 171 N.C. App. at 50, 613 S.E.2d at 711 ; Nettles , 170 N.C. App. at 107, 612 S.E.2d at 176. Further, the State did not attach any significance to the above evidence in its argument on appeal concerning intent to sell.
Concerning the handgun recovered from the glove compartment of Jones' car, I do not contend that recovery of a weapon can never be relevant to PWISD, I simply do not believe its relevance in the present case, combined with the other relevant evidence, was sufficient to survive Defendant's motion to dismiss. The State neither presented testimony suggesting that the presence of the gun in the glove compartment of Jones' Impala was indicative of an intent to sell on Defendant's part, nor made any such argument to the jury. If the jury considered the gun in its intent to sell deliberation, it would have had to have done so on its own initiative, which could have been improper. See State v. Mitchell , 336 N.C. 22, 29-30, 442 S.E.2d 24, 28 (1994) ; Smith , 99 N.C. App. at 71-72, 392 S.E.2d at 645. Because the State did not present testimony in support of *207 this argument, nor make this argument to the jury, I presume the jury acted appropriately.[4]
The majority opinion, in arguing for greater relevance of the handgun in our analysis, relies in part on a statement in Smith : "As a *756 practical matter, firearms are frequently involved for protection in the illegal drug trade." Smith , 99 N.C. App. at 72, 392 S.E.2d at 645. It is important to place this quote in context. In Smith , upon searching the two defendants' residence, officers found, inter alia , four "nickel" bags of marijuana; rolling papers; "a bag of marijuana in a photograph holder;" $355.00; 0.22 grams of cocaine in a "bottle labeled 'manitol[;]' " a box of plastic baggies; "seventeen individual baggies" with 2.1 grams of cocaine divided between them, all located in a larger bag; three pistols; and "some scales." Smith , 99 N.C. App. at 70, 392 S.E.2d at 644.
One of the defendants in Smith was "charged with felonious possession of a firearm by a convicted felon." Id . at 69, 392 S.E.2d at 643. Both the defendants were charged with PWISD. Id . "The trial court granted defendant Smith's motion to sever the firearm possession charge" from the PWISD charges. Id . Therefore, the three pistols recovered from the residence were not introduced as evidence of intent to sell in the PWISD portion of the trial. However, at the PWISD portion of the trial an officer testified that three guns were found in the residence. The defendants in Smith first argued that admission of this testimony "was irrelevant and unduly prejudicial" during the PWISD portion of the trial. Id . at 71, 392 S.E.2d at 644. In deciding the defendants' first argument, this Court first held the defendants' argument was not properly preserved, then further reasoned:
We think that the testimony concerning the guns was relevant to "illustrate the circumstances surrounding [defendant Crawford's] arrest." We also cannot say that it is totally irrelevant to ... the charges of possession with intent to sell or deliver cocaine or marijuana. As a practical matter, firearms are frequently involved for protection in the illegal drug trade.
*208 We recognize the highly inflammatory nature of raising the issue of firearms before the jury, and that the probative value of the testimony concerning the guns may have been outweighed by the possibility of undue prejudice. In this case, however, if there was error in admitting the testimony, it was harmless to the defendants since the evidence against them was ample.
Smith , 99 N.C. App. at 71-72, 392 S.E.2d at 645 (citations omitted) (emphasis added).
This analysis was solely limited to whether the defendants were prejudiced by the admission of the gun evidence during the PWISD portion of the trial, and had no connection to the defendants' second argument, which concerned the sufficiency of the evidence to support PWISD. Further, this Court in Smith recognized that evidence of the presence of firearms in a trial for PWISD could be "highly inflammatory" and "that the probative value of the testimony concerning the guns may have been outweighed by the possibility of undue prejudice." Id . at 72, 392 S.E.2d at 645. The portion of the analysis cited by the majority opinion is also dicta . In the part of its opinion where this Court addressed the defendants' argument that the State has failed to present sufficient evidence of intent to sell, the recovery of the firearms was not considered, nor even mentioned . Id . at 73, 392 S.E.2d at 646.[5]
In the present case, Defendant's charge of possession of a firearm on educational property was not severed from his charge of PWISD, so the jury was not prevented from hearing evidence of the gun recovered from the glove compartment of Jones' Impala prior to deliberating the PWISD charge. However, the questions, testimony, and arguments made at trial indicate the evidence of the firearm was presented solely in support of the charge of possession of a firearm on educational property, and not in support of PWISD. See Sanders , 171 N.C. App. at 50, 613 S.E.2d at 711 (emphasis added) ("In particular, *757 the dissent points out that the thirty diazepam pills were found inside a cellophane cigarette package inside a plastic bag. However, no officer testified that the packaging of the *209 pills was indicative of an intent to sell rather than personal use ."). There is no evidence that the trial court considered the gun at all when it denied Defendant's motion to dismiss the PWISD charge. It appears, as in Smith , that the State presented the gun evidence solely in support of the possession of a firearm charge. Because this argument was not made at trial , Defendant had no opportunity to object to it and argue that the jury should be prohibited from considering the evidence of the gun in its intent to sell deliberations, pursuant to N.C. Gen. Stat. § 1A-1, Rule 403, or for any other reason.
The State's arguments in closing made in support of the intent prong of PWISD indicate that the gun had not been introduced as evidence of Defendant's intent to sell:
In this case you can look at the denominations of currency in [D]efendant's pocket,[6] the evidence that you've heard testimony of with relation to the street value of these drugs.... Those are things that you can all-you can add together and say that those are circumstantial pieces of evidence that showed his intent to sell and deliver the marijuana.
The fact that he is out of school, the fact that he is out of school at 10:00 in the morning on a Friday as a 20-year-old man who is not enrolled there, not a student there and says he's there to pick up someone else who they tried to locate and can't.[7] What can you infer from that? Was he really there to pick somebody up, or was he there to do something else?
....
In this case you're looking at the circumstances under which this evidence was recovered to determine what you think [Defendant]'s intent was, if he, in fact, possessed it.
....
*210 But [the marijuana was] packaged individually. If you're using for yourself, why have them in separate bags, the separate packaging , the cash , the location of the items. Those are things that you can look at and draw inferences from to conclude [D]efendant's intent, that his intent was to distribute marijuana. It could very well be that his intent was to distribute marijuana that day at the school. He said he was there to pick somebody up.
The State, in closing, did not argue any relevance related to the amount of marijuana recovered, the gun, or that the cash was "unexplained."
The majority opinion also cites Boyd and State v. Willis , 125 N.C. App. 537, 481 S.E.2d 407 (1997) in support of its argument for the relevance of the gun recovered from Jones' Impala. As noted above, the "holding" in Smith upon which the Boyd Court relied does not exist. Further, Boyd stands for the proposition that on the facts of that case , the gun was relevant to PWISD, and that the trial court did not abuse its discretion in ruling that the probative value of the gun was not outweighed by its prejudicial effect. Boyd , 177 N.C. App. at 171-72, 628 S.E.2d at 802-03. The trial court in the present case was never asked to make any rulings pursuant to Rules 401 or 403, presumably because the gun was never presented as evidence in support of PWISD , the trial was not bifurcated, and the gun was clearly relevant and probative with respect to Defendant's possession of a firearm charge.
Willis did not involve any issue of intent to sell. This Court mentioned the "common-sense association of drugs and guns" in its analysis concerning whether the officers in that case were justified in conducting a more thorough search of the defendant, because the defendant had just left a known drug house, was acting nervously, and the "sudden *758 lunge of [the defendant's] hand into the interior of his jacket during the [initial] pat-down" put the officers in reasonable concern for their safety. Willis , 125 N.C. App. at 543, 481 S.E.2d at 411. Based upon this reasoning, this Court held: "At that point, the situation became fluid and volatile, and Detective Sholar reacted reasonably and proportionately in searching and emptying the jacket pocket." Id . at 543-44, 481 S.E.2d at 412. That drug dealers are known to sometimes carry weapons is not in dispute. This fact does not make every firearm found in proximity to a defendant automatically relevant or admissible in a PWISD trial.
The majority opinion cites federal cases in support of its argument that "[d]espite our precedents, the dissenting opinion does not consider the additional presence of the stolen and locked firearm as an intent *211 factor." Initially, the majority opinion has cited only one North Carolina precedent, Boyd , that considered the presence of a gun as an intent factor. The federal cases are not binding precedent in the matter before us. Further, I reiterate that I do consider firearms as potential "intent factors," but based upon North Carolina precedent, I do not believe it is per se proper to consider possession of a firearm in every PWISD case, nor do I believe possession of a firearm should generally be given the same weight as the established Wilkins factors. Finally, because the State did not introduce the gun recovered from Jones' Impala as evidence of Defendant's intent to sell, Defendant had no opportunity to make a Rule 403 objection.
"Quality" is not a Wilkins factor, but in the proper case I believe it can be considered in an intent to sell analysis. Concerning the quality of the marijuana in the present case, I rely on the uncontroverted testimony of Officer Brandenburg. As the majority opinion acknowledges concerning the two bags of marijuana found in the console, Officer Brandenburg testified:
They were in larger bags, and if memory serves me right, they were more of what I would consider remnant marijuana , from where-if you were to bag up the dime bags, this would be the remnant stuff that didn't have as many buds and stuff in it as the regular marijuana , or the sellable marijuana .
Officer Brandenburg's testimony implies that the "remnant marijuana" he found in the console was not "regular" or "sellable marijuana." At a minimum, his testimony strongly implies that the "remnant marijuana" recovered from the console was not of a quality typically offered for sale. However, I would still vacate Defendant's conviction if the de minimis 10.19 grams of marijuana was in fact quality "sellable marijuana" and not low-quality "remnant stuff."
E. Totality of the Evidence
The majority opinion devotes a significant portion of its analysis attempting to distinguish the facts in the present case from those in Wilkins and Nettles by focusing on individual differences between specific factors, and I have already addressed a number of those arguments. However, it is the totality of the evidence in each case that must be considered, and I do not rely solely on Wilkins in support of my "vote to reverse the jury's verdict." This Court considered Wilkins and Nettles in a very recent unpublished opinion, State v. Carter, --- N.C. App. ----, 802 S.E.2d 917, 2017 WL 3027550 (2017) (unpublished), and then vacated *212 the defendant's conviction for PWISD. I find the facts and reasoning in Carter relevant to our analysis. In Carter , police recovered from the defendant 0.63 grams of methamphetamine in five separate baggies "or .0225% of the minimum amount to presumptively constitute trafficking[,]" "two unlabeled pill bottles containing fifty-two (52) tablets of oxycodone," $431.00, a syringe, and two cell phones. Id . at *1-3. This court in Carter compared the facts before it to those in Wilkins and Nettles :
We find the evidence at hand substantially similar to that in Wilkins and Nettles . The State presented no evidence that the 0.63 grams of methamphetamine, a very small amount, possessed by Defendant "was more than a drug user normally would possess for personal use." No evidence was presented that the manner in which the methamphetamine was packaged [five separate baggies] was more consistent with Defendant intending to sell rather than *759 having previously used the methamphetamine . The $431.00 found on Defendant was almost two-thirds less than the $1,264.00 found insufficient in Wilkins to support an inference of intent to sell.[8] There was no evidence of other drug paraphernalia consistent with an intent to sell methamphetamine such as weighing scales, chemicals, or empty plastic baggies .[9]
Id. at *3 (emphasis added).
I find the evidence before us substantially similar to that in Carter , and would likewise find it "substantially similar to that in Wilkins and Nettles ." Id . The amount of drugs recovered in Nettles and Carter was relatively greater than that recovered in the present case, though I would characterize the amounts recovered in all four cases as de minimis . The amount of cash recovered in each instance was significant, but not highly unusual. "There was no testimony that the drugs were packaged, stored, or labeled in a manner consistent with the sale of drugs [in any of the four cases]." Nettles , 170 N.C. App. at 107, 612 S.E.2d at 176.
*213 Paraphernalia was found with the drugs in Nettles and Carter , but "[t]here was no evidence of other drug paraphernalia consistent with an intent to sell ... such as weighing scales, chemicals, or empty plastic baggies." Carter, 2017 WL 3027550 at *3. No paraphernalia, consistent with an intent to sell or not, was found in Wilkins or the present case. The only potentially relevant difference that I can find between the facts in Wilkins , Nettles , Carter , and the present case, is the gun recovered from the glove compartment of Jones' Impala. However, for all the reasons discussed above, I do not believe the recovery of this gun serves to transmute this case from one lacking substantial evidence of an intent to sell into one including it.
III. Conclusion
At trial, the State presented evidence that Defendant was in possession of $1,504.00 and a small amount of marijuana, packaged in a manner consistent with personal use. The State also argues on appeal that we should consider the firearm recovered from the Impala, even though this evidence was not presented to the jury as evidence of any intent to sell. "The State points to no other [relevant] evidence or circumstances that in any way suggest that [D]efendant had an intent to sell or deliver the [marijuana]." Turner , 168 N.C. App. at 158, 607 S.E.2d at 24. "[W]hen the evidence is ... sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator, the motion to dismiss must be allowed." Id . at 158-59, 607 S.E.2d at 24 (citation omitted). This is true even if "the suspicion so aroused by the evidence is strong." State v. Dulin , --- N.C. App. ----, ----, 786 S.E.2d 803, 807 (2016) (citation omitted). I do not find the suspicion aroused by the evidence in the present case to be strong. I reach the same conclusion when fully considering the gun recovered from the glove compartment of Jones' Impala, and assuming the marijuana recovered from the center console was all "sellable."
The jury was also instructed on the lesser-included offense of possession of marijuana, Defendant admitted at trial that he possessed the marijuana, and the jury necessarily found that Defendant possessed the marijuana by convicting him of PWISD. "Consequently, [I would] vacate [D]efendant's sentence [of PWISD] and remand for entry of a judgment 'as upon a verdict of guilty of simple possession of marijuana.' " Wilkins , 208 N.C. App. at 733, 703 S.E.2d at 811 (citation omitted).

The majority opinion cites Morgan for the statement that "one ounce or 28.3 grams of cocaine 'was sufficient to support the inference that defendant intended to deliver or sell the cocaine[.]' " I note that according to Morgan : "The General Assembly has determined that twenty-eight grams of cocaine evinces an intent to distribute that drug on a large scale. N.C.G.S. § 90-95(h)(3) (1990). As in Williams, we are satisfied that the full ounce defendant had conspired with Mr. Queen to possess 'was a substantial amount and was more than an individual would possess for his personal consumption.' " Morgan , 329 N.C. at 660, 406 S.E.2d at 836 (citations omitted). For trafficking purposes, one ounce of cocaine is equivalent to ten pounds of marijuana. See N.C. Gen. Stat. § 90-95(h)(1) (2015).

The true value of all the marijuana recovered in the present case was not established at trial.

Although this Court treated the amount of cocaine in Alston as "small," 4.27 grams constituted approximately 15.00% of the amount required for the lowest grade of "trafficking" cocaine, as opposed to the amount of marijuana found in the present case, which was 0.0024% of the amount required for a trafficking charge. N.C.G.S. § 90-95(h)(3)(a.). For trafficking purposes, the amount of cocaine involved in Alston was 6,250 times greater than the amount of marijuana involved in this case.

In light of Defendant's acquittal for possessing a firearm on educational property, we now know that the jury did not improperly consider the gun in its intent to sell analysis. I do not contend that the not guilty verdict on the charge of possession of a firearm was relevant to Defendant's motion to dismiss the PWISD charge. The jury's ultimate determination that the State had not proved Defendant possessed the gun in the glove compartment cannot serve to retroactively support Defendant's motion to dismiss.

I note that this Court has, in the past, improperly stated that Smith includes a firearm related holding relevant to PWISD. See State v. Boyd , 177 N.C. App. 165, 171, 628 S.E.2d 796, 802 (2006) ("See State v. Smith, ... (holding that trial court could properly determine that evidence of a gun was relevant to the charge of possession with intent to sell or deliver cocaine because '[a]s a practical matter, firearms are frequently involved for protection in the illegal drug trade' ")). There is no such holding in Smith , however the majority opinion relies on this language from Boyd in support of its argument.

Again, because there is no record evidence of the denominations, we cannot consider the State's characterization of the cash recovered on appeal.

Officer Brandenburg's testimony was that while he was detaining Defendant at the school, he saw Wilson, the friend Defendant claimed he was picking up, and that they seemed to communicate in some manner at a distance, but that when Officer Brandenburg later tried to locate the friend at the school, he could not.

$431.00 is slightly more than the amount of money recovered in Nettles .

In a footnote, this Court in Carter stated: "We note that the detectives found two cell phones when they searched Defendant. However, the State made no argument in its brief on appeal concerning the significance of Defendant's possession of these cell phones; and, therefore, we do not consider their significance either." Carter, 2017 WL 3027550 at *3, n. 1. I would note, in the present case, the State did not argue the significance of a number of the facts relied upon by the majority opinion, and I do not believe we should consider them.